Fred **LOMBARDI**, Plaintiff,

v.

**J.C. SUARÉS**, Defendant.

No. 95 Civ. 7954 (DAB).

United States District Court, S.D. New York.

April 29, 1996.

Aieta & Greco, New York City (Mario Aieta, of counsel), for Plaintiff.

Bodine & Herzog, New York City (Jonathan C. Herzog, Frederick P. Bimbler, of counsel), for Defendant.

### MEMORANDUM AND ORDER

BATTS, District Judge.

Plaintiff, Fred Lombardi ("Lombardi") claims that he co-authored a book with Defendant, J.C. Suarés ("Suarés"). Plaintiff seeks a declaratory judgment that he is the joint-author of the book as well as an accounting of all profits earned from the book. In the alternative, Plaintiff asks the Court to find that Suarés was unjustly enriched by Plaintiff's contributions to the book.[1]

### I. BACKGROUND

Prior to August 20, 1993, Lombardi was an employee of "Variety," a weekly trade publication focusing on the entertainment industry. (Compl. ¶ 5.) Suarés was also an employee, and an art director, of "Variety." (Compl. ¶ 6.) Lombardi alleges that in 1992, Lombardi and Suarés agreed to create a book entitled "The Variety Book of Movie Lists" (the "Work"). (Compl. ¶ 7.) Lombardi claims the Work was to be published by former Defendant, Reed Consumer Books Limited ("Reed"), and that Reed would obtain, from "Variety," the right to use the name "Variety" in the Work. (Compl. ¶ 8.) Lombardi claims an agreement between himself and Suarés provided that Lombardi would create the text for the Work and Suarés would illustrate the Work. (Compl. ¶ 9.) Lombardi alleges that the parties'

work would be merged into a "unitary whole." (Compl. ¶¶ 10–11.)

Lombardi alleges that Suarés entered into a written contract with Reed in January 1993, without Lombardi's approval, wherein Suarés agreed to deliver to Reed a work entitled "The Variety Book of Movie Lists." (Compl. ¶ 12.) Allegedly, Suarés also agreed that Reed would retain the copyright on all literary material submitted by Suarés and would have the exclusive right to publish the Work worldwide. (Id.) Suarés allegedly made a representation to Reed that Suarés alone had the power and authority to enter into a contract regarding the Work to be delivered. (Id.)

During 1993, Lombardi contacted entertainment industry professionals, and solicited lists to be incorporated into the Work. (Compl. ¶ 13.) Lombardi provided commentary to these lists and created his own lists, entitled "Author's List," for the Work. (Id.) In September 1993, Lombardi gave Suarés a working draft of the Work. (Compl. ¶ 14.) Lombardi claims Suarés added illustrations to the Work. (Compl. ¶ 15.)

Without Lombardi's approval, Suarés added text to the Work, (Compl. ¶ 16), then delivered it, with the additions, to Reed for publishing. (Compl. ¶ 17.) Suarés received an advance of $20,000 for delivery of the Work. (Compl. ¶ 18.) Reed prepared the Work for publication in the United Kingdom and provided Suarés with proofs for review. (Compl. ¶ 20.) Suarés approved the proofs without allowing Lombardi an opportunity to review the proofs. (Compl. ¶ 21.)

In February 1994, Lombardi learned of the impending publication in the United Kingdom and contacted Reed to object to publication without his input. (Compl. ¶ 22.) Reed advised Lombardi that it was too late to stop publication in the United Kingdom. (Id.) However, in March 1994, Reed delivered proofs of the Work to Lombardi in preparation for publication in the United States. (Id.) Upon Reed's representation to Lombardi that it would incorporate Lombardi's changes to the Work, Lombardi made vari-

---

1. Plaintiff's third cause of action, for breach of contract, was brought against Defendant Reed Consumer Books Limited only. However, Defendant Reed was dismissed from this action pursuant to a Notice of Dismissal so ordered on January 23, 1996.

ous corrections to the proofs and gave said proofs to Reed. (Compl. ¶ 23.) In December 1994, Reed published the Work in the United States without Lombardi's knowledge or approval. (Compl. ¶ 24.) The Work published in the United States did not incorporate the changes made by Lombardi. (Compl. ¶¶ 25–28.)

To date, Suarés has yet to make an accounting of any profits available to Lombardi. Defendant now moves to dismiss for lack of jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1).[2]

## II. DISCUSSION

Lombardi claims federal jurisdiction under 28 U.S.C. § 1338(a), which states that the "district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to ... copyrights." 28 U.S.C. § 1338(a). Under Section 1338(a) the Court must decide whether the claims in the Complaint "arise under" the Copyright Acts. Plaintiff claims they do because the Court must interpret Sections 101 and 201 of the Copyright Act of 1976 in order to decide the main issue of his case.

■ The grant of federal jurisdiction pursuant to Section 1338, is not thought to include a "dispute as to ownership or contractual enforcement turning on the facts or on ordinary principles of contract law." *T.B. Harms Co. v. Eliscu*, 339 F.2d 823, 826 (2d Cir.1964), *cert. denied*, 381 U.S. 915, 85 S.Ct. 1534, 14 L.Ed.2d 435 (1965). The criteria established by the Second Circuit to determine whether an action arises under the Copyright Act are as follows: if the Complaint is for a remedy expressly granted by the Act, or the Complaint asserts a claim requiring construction of the Act or if the Complaint presents an issue surrounding a "distinctive policy of the Act requir[ing] that federal principles control the disposition of the claim," *T.B. Harms*, 339 F.2d at 828, then the claim "arises under" the Copyright Act.

■ In assessing the jurisdiction of the Court, "the formal allegations of the complaint must yield to the substance of the claim." *Stepdesign, Inc. v. Research Media, Inc.*, 442 F.Supp. 32, 33 (S.D.N.Y.1977); *see also T.B. Harms*, 339 F.2d 823; *Bear Creek Prods., Inc. v. Saleh*, 643 F.Supp. 489, 492 (S.D.N.Y.1986). Defendant argues that Plaintiff's principal complaint is one grounded in contract.[3] Plaintiff argues that he has brought a copyright cause of action because he seeks a declaratory judgment that he is the contributor of a joint work, pursuant to 17 U.S.C. § 101. Plaintiff alleges that because the definition of "joint work"[4] appears in the Copyright Act the action is properly before the Court. Although the Plaintiff agrees with the Defendant that issues of ownership pursuant to a contract including a transfer of the rights in a copyright, are usually not governed by federal jurisdiction, he argues that 1) here there is no claim of a transfer of a copyright right or an ownership issue arising from a written contract and 2) that this rule arose under the Copyright Act of 1909. Plaintiff argues his claim depends on whether he is considered a joint author and therefore a joint owner. In response, Defendant asserts that he is not challenging the fact that Plaintiff wrote the original text, (Def.'s Reply Mem. at 3) but that the nature of the relationship between him and the Plaintiff is contractual—Defendant alleges that Plaintiff was a "work for hire" author.

---

2. Although the Plaintiff is a resident of New Jersey and the Defendant is a resident of New York, there has been no argument forwarded in support of diversity jurisdiction presumably because it appears there is only a substantiated claim of $10,000.00.

3. Plaintiff does not allege a breach of contract action against the Defendant Suarés.

4. The Second Circuit, in *Childress v. Taylor*, ruled that a) "a work qualifies as a 'joint work' under the definition section of the Copyright Act, 17 U.S.C. § 101, only when both authors intended, at the time the work was created, 'that their contributions be merged into inseparable or interdependent parts of a unitary whole,'" and that there is sufficient evidence to permit a reasonable trier of fact to find that Plaintiff has that intent. 945 F.2d 500, 504 (2d Cir.1991). Finally, the Court found that the copyright law required that both contributions be copyrightable. *Id.* at 507.

**54**

(Suarés Aff. ¶ 5.) [5]

The Court must decide whether a decision defining whether Plaintiff contributed to a joint work is one of copyright law or one of contract law. The Court finds it is one of copyright law. *See RX Data Corp. v. Department of Soc. Servs.*, 684 F.2d 192, 196 n. 1 (2d Cir.1982); *Lieberman v. Estate of Chayefsky*, 535 F.Supp. 90 (S.D.N.Y.1982). There is no written contract here for the Court to interpret.[6] The Court must look at the Complaint, at this juncture of the case, in a light favorable to the Plaintiff. It would seem therefore that the applicability of terms defined in the Copyright Act are at issue between the parties.

Finding that Plaintiff's allegations require a determination of the applicability of definitions contained in the Copyright Act, this case is found to arise under the Act. Therefore, pursuant to the *Harms* test, this is an issue that falls under 28 U.S.C. § 1338(a).

The Court, finding subject matter jurisdiction, at this juncture, also retains jurisdiction over the state law claims, pursuant to 28 U.S.C. § 1367. *See Block v. First Blood Assocs.*, 988 F.2d 344, 351 (2d Cir.1993).

The parties are hereby ordered to appear for a pre-trial conference on May 31, 1996, at 10:30 A.M.

SO ORDERED.

---

5. However, "work made for hire" is also defined in the Copyright Act of 1976.

6. The cases which the Defendant cites involve contracts which were interpreted in deciding who owned the copyright at issue. In *Stepdesign, Inc. v. Research Media, Inc.*, two corporations sued one another over agreements concerning an assignment of copyright. 442 F.Supp. 32 (S.D.N.Y.1977). The court found that the fundamental controversy involved interpretation of two agreements to determine ownership and therefore rights to copyright. *Id.* at 32–34. The court noted that the primary and controlling purpose of complaint was to establish ownership. *Id.* at 34.

In *Rotardier v. Entertainment Co. Music Group*, the court found that where a tangible contract existed providing for copyright ownership, the controversy was a determination of breach of said contract. 518 F.Supp. 919, 920–21 (S.D.N.Y.1981).

*Bear Creek Prods., Inc. v. Saleh*, involved a contract covering the production and financing of a documentary. 643 F.Supp. 489, 492 (S.D.N.Y.1986). The Court concluded the main issue was who owned the copyright, which would be established by interpretation of the contract.

The other cases to which the Defendants refer were brought before the passage of the 1976 Copyright Act. *See Keith v. Scruggs*, 507 F.Supp. 968, 969 (S.D.N.Y.1981) (applying the Copyright Act of 1909); *Elan Assocs., Ltd. v. Quackenbush Music, Ltd.*, 339 F.Supp. 461, 462 (S.D.N.Y.1972) (before passage of the Copyright Act of 1976); *Harrington v. Mure*, 186 F.Supp. 655, 657 (S.D.N.Y.1960) (before passage of the Copyright Act of 1976).