Susan ACKOFF–ORTEGA, Cele Ackoff, and Jon Ackoff, Plaintiffs,

v.

WINDSWEPT PACIFIC ENTERTAINMENT CO. (INC.), Screen Gems–EMI Music, Inc., and Richard Rosenblatt, Defendants.

No. 99 CIV. 11710(SAS).

United States District Court, S.D. New York.

June 5, 2000.

Frederick F. Greenman, Jr., Deutsch Klagsbrun & Blasband, New York City, for Plaintiffs.

Howard Gotbetter, New York City, for Defendant Richard Rosenblatt.

**OPINION AND ORDER**

SCHEINDLIN, District Judge.

Plaintiffs Susan Ackoff–Ortega, Cele Ackoff and Jon Ackoff seek a declaratory judgment under federal copyright law against defendants Windswept Pacific Entertainment Co. (Inc.) ("Windswept"), Screen Gems–EMI Music, Inc. ("Screen Gems"), and assert several state law contract claims against defendant Richard Rosenblatt. Rosenblatt now moves to dismiss or stay plaintiffs' claims against him, because plaintiffs have asserted those same claims as counterclaims in a state court action filed by Rosenblatt. For the reasons set forth below, Rosenblatt's motion is denied.

## I. BACKGROUND

### A. Facts

Robert Ackoff, a songwriter whose professional name was "Beau Gentry," died intestate in 1983, unmarried and without children. *See* Complaint ¶¶ 2–3.[1] Plaintiff Cele Ackoff is Robert Ackoff's mother, and plaintiffs Susan Ackoff–Ortega and Jon Ackoff are Cele Ackoff's surviving children. *See id.* ¶ 4. On January 18, 1967, Robert Ackoff entered into an employment-for-hire agreement with Patricia Music Publishing ("Patricia Music"). *See id.* ¶ 14.[2] Sometime prior to April 4, 1968, Robert Ackoff co-authored the song "Mony, Mony" with Tommy James, Bobby Bloom, and defendant Richard Rosenblatt, a songwriter whose professional name was "Ritchie Cordell." *See id.* ¶¶ 5–6.

Following the completion of "Mony, Mony," the story of this case unfolds along several plot lines. The first plot line involves Robert Ackoff's interest in "Mony, Mony," which has changed hands a number of times in the past thirty-two years. First, Ackoff assigned his interest in the

---

1. These facts are taken from the Complaint. *See Maritima Petroleo E Engenharia LTDA v. Ocean Rig 1 AS,* 78 F.Supp.2d 162, 165 (S.D.N.Y.1999) ("When considering a motion to dismiss for lack of subject matter jurisdic-

tion, a court must accept as true all material factual allegations in the complaint.").

2. Ackoff entered into an identical agreement with Patricia Music on June 5, 1967. *See id.*

initial term of copyright to Patricia Music. *See id.* ¶ 7. Next, on or about December 1, 1971, Ackoff further assigned all his interest in "Mony, Mony" to Nomadam Music Corporation ("Nomadam"), which was affiliated with Patricia Music. *See id.* ¶ 8. Seventeen years later, on or about August 31, 1988, the interests in "Mony, Mony" held by Patricia Music and Nomadam were assigned, after various intermediary transfers, to Windswept, a California corporation that does business with and maintains an office in New York. *See id.* ¶ 9. Finally, on or about July 28, 1999, Screen Gems, a Delaware corporation that does business with and maintains an office in New York, acquired Windswept's interest in "Mony, Mony." *See id.* ¶ 16. In recent years, Robert Ackoff's interest in "Mony, Mony." has generated total royalties of approximately $80,000 per year. *See id.* ¶ 17.

The second plot line involves the copyright registration of "Mony, Mony," which also has changed several times. On or about April 8, 1968, Patricia Music registered "Mony, Mony" with the United States Copyright Office (the "Copyright Office"), listing Ackoff, Rosenblatt, Bloom and James as the authors. *See id.* Twenty-eight years later, on or about February 5, 1996, Windswept registered "Mony, Mony" with the Copyright Office for the renewal term of copyright, again listing Ackoff, Rosenblatt, Bloom and James as the authors. *See id.* ¶ 10. The important change took place on August 20, 1997, when Windswept filed a supplementary copyright registration with the Copyright Office. *See id.* ¶ 13. In this supplementary registration, Windswept claimed that Patricia Music, not Robert Ackoff, was an author of "Mony, Mony," because Ackoff wrote the song as a work for hire. *See id.* Eight days later, the Copyright Office issued a supplementary registration reflecting this change. *See id.*

The final plot line involves the relationship between the Ackoffs and Richard Rosenblatt. In October 1988, Rosenblatt approached Cele Ackoff about recovering Robert Ackoff's share of the renewal copyright in "Mony, Mony" and twenty other songs in exchange for a portion of the royalties. *See id.* ¶ 19. Nearly a year later, on or about September 25, 1989, Cele and Jon Ackoff entered into a contract with Rosenblatt, in which Rosenblatt undertook to recover Ackoff's share of the renewal copyrights. *See id.* ¶¶ 19–21. In exchange, Cele and Jon Ackoff assigned those renewal copyrights to Rosenblatt, who was required to pay Jon 50 percent of any royalties that he recovered, except for royalties on public performances. *See id.* Plaintiffs allege that, when Cele and Jon Ackoff signed the contract, they were not represented by legal counsel, not knowledgeable about the music business, and incapable of understanding the contract. *See id.* ¶ 21.

Although Rosenblatt subsequently filed a number of lawsuits against Windswept, plaintiffs allege that Rosenblatt's efforts hindered rather than helped their claim to the renewal copyright in "Mony, Mony" and the other songs. *See id.* ¶ 26. In 1993, Rosenblatt sued Windswept and several other parties in federal court to recover his own interest in 59 songs. *See id.* That lawsuit, which did not involve Robert Ackoff's interest, was dismissed for lack of subject matter jurisdiction. *See id.* In December 1994, Rosenblatt brought the same claims against the same defendants in state court. *See id.* Again, Robert Ackoff's interests were not part of that lawsuit. *See id.*

In January 1995, however, Rosenblatt's agent, Richard Roemer, informed Windswept that Rosenblatt was claiming Robert Ackoff's share in the renewal copyrights of ten songs, including "Mony, Mony." *See id.* In April 1995, Windswept informed Rosenblatt that it owned the renewal copyrights by virtue of the employment-for-hire agreement signed by Robert Ackoff on January 18, 1967. *See id.* In December 1995, during a deposition of Rosenblatt by Windswept's attorney pursuant to the state court action, Rosenblatt stipulated to

exchange general releases with Windswept and to dismiss the state court action with prejudice. *See id.* In February 1997, Rosenblatt delivered to Windswept a general release of all claims against Windswept which Rosenblatt had or might ever have arising out of any events on or before September 13, 1995.[3] *See id.*

Plaintiffs allege that they did not learn of Rosenblatt's release until April 20, 1998. *See id.* ¶ 27. On that day, Rosenblatt sued Windswept, Cele Ackoff and Susan Ackoff–Ortega (as well as two other parties not relevant to this case) in this Court, claiming that he alone owned Ackoff's share of the renewal copyrights in "Mony, Mony" and two other songs. *See id.* Rosenblatt subsequently dismissed that action with prejudice as to Windswept and without prejudice as to Cele Ackoff and Susan Ackoff–Ortega. *See id.*

**B. Procedural History**

On December 1, 1999, plaintiffs Susan Ackoff–Ortega, Cele Ackoff and Jon Ackoff sued defendants Windswept, Screen Gems and Rosenblatt in this Court. In their Complaint, plaintiffs first seek a declaratory judgment stating that, because "Mony, Mony" was not a work-for-hire under the Copyright Act, they are entitled to Ackoff's share of the renewal copyright. In addition, plaintiffs ask that defendants be required to account for and pay over royalties and other monies received by or credited to them because of the renewal copyright. Second, plaintiffs seek a declaratory judgment stating that their contract with Rosenblatt is unenforceable on the basis of unconscionability, lack of consideration, and fraudulent inducement. Finally, plaintiffs allege that Rosenblatt breached their contract with him by granting Windswept a general release. Plaintiffs seek damages of at least $1,000,000 on their breach of contract claim.

**3.** In the interim, Rosenblatt filed and dismissed another federal court action against

Sometime during 1998, Rosenblatt sued the Ackoffs in state court. The counterclaims filed by the Ackoffs in that suit mirror their claims against Rosenblatt in this case. On February 23, 2000, Justice Alice Schlesinger dismissed the breach of contract counterclaim without prejudice, primarily because of this lawsuit. *See* Reply Brief of Defendant Rosenblatt in Support of his Dismissal Motion ("Reply Br."), Ex. 1 (Transcript of February 23, 2000 Conference). That same day, Justice Schlesinger denied Rosenblatt's motion to dismiss the unconscionability and failure of consideration counterclaims. *See id.* Finally, the Ackoffs agreed to withdraw their fraud counterclaim with prejudice. *See id.*

Rosenblatt now moves to dismiss the Complaint and all causes of action against him pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(3) and 12(h)(3) or, alternatively, to stay this action pending resolution of the state court action. Rosenblatt argues that this Court lacks subject matter jurisdiction over the claims against him, because those claims have nothing to do with federal copyright law and simply arise out of his contract with the Ackoffs.

**II. DISCUSSION**

"Once subject matter jurisdiction is challenged under Rule 12(b)(1), the burden of establishing jurisdiction rests with the party asserting that it exists." *Daniels v. Doe,* No. 99 Civ. 2192, 1999 WL 1211824, at *1 (S.D.N.Y. Dec.17, 1999). As noted above, the court must accept as true all material factual allegations in the Complaint. Nevertheless, "argumentative inferences favorable to the party asserting jurisdiction should not be drawn." *Atlantic Mutual Insurance Co. v. Balfour Maclaine International Ltd.,* 968 F.2d 196, 198 (2d Cir.1992).

█ Rosenblatt does not argue that this Court lacks subject matter jurisdiction

Windswept. *See id.*

over plaintiffs' first cause of action, which seeks a declaratory judgment stating that "Mony, Mony" was not a work-for-hire and therefore that plaintiffs are entitled to Ackoff's share of the renewal copyright. Nevertheless, this Court has an independent obligation to ensure the existence of subject matter jurisdiction. *See E.R. Squibb & Sons, Inc. v. Accident & Casualty Ins. Co.*, 160 F.3d 925, 929 (2d Cir.1998) ("[N]o amount of agreement by the parties can create jurisdiction where none exists."). "In cases involving works protected by statutory copyright, the division between jurisdiction in the federal courts, on the one hand, and jurisdiction in the courts of the various states, on the other, poses among the knottiest procedural problems in copyright jurisprudence." 3 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 12.01[A], at 12–4 (May 1999). The Second Circuit recently reaffirmed the applicable test, first laid out by Judge Henry Friendly in 1964:

> Synthesizing the Supreme Court authorities, Judge Friendly concluded that a suit 'arises under' the Copyright Act if:
>
> (1) '[T]he complaint is for a remedy expressly granted by the Act, e.g., a suit for infringement or for the statutory royalties for record reproduction ...;' or,
>
> (2) '[T]he complaint ... asserts a claim requiring construction of the Act ....'

*Bassett v. Mashantucket Pequot Tribe*, 204 F.3d 343, 349 (2d Cir.2000) (quoting *T.B. Harms Co. v. Eliscu*, 339 F.2d 823, 828 (2d Cir.1964)).

■ Thankfully, application of that test to the facts of this case does not present a knotty procedural problem. The essential question presented by plaintiffs' claim for a declaratory judgment is whether "Mony, Mony" is a work for hire. The Copyright Act defines a "work made for hire" in relevant part as "a work prepared by an employee within the scope of his or her employment." 17 U.S.C. § 101. The Act then provides:

> In the case of a work made for hire, the employer or other person for whom the work was prepared is considered the author for purposes of this title, and, unless the parties have expressly agreed otherwise in a written instrument signed by them, owns all of the rights comprised in the copyright.

17 U.S.C. § 201(b). Determining whether "Mony, Mony" is a work for hire requires construction of these provisions of the Copyright Act. *See Merchant v. Levy*, 92 F.3d 51, 55–56 (2d Cir.1996) (claim required construction of Copyright Act in part because defendants were relying on work for hire doctrine); *Lombardi v. Suares*, 923 F.Supp. 51, 53–54 (S.D.N.Y. 1996) (same); *see also Royal v. Leading Edge Products, Inc.*, 833 F.2d 1, 3 (1st Cir.1987) (claim did not require construction of Copyright Act because the work for hire doctrine was "at best, only tangentially implicated").

■ Because the Court has subject matter jurisdiction over plaintiffs' first claim, the next question is whether to exercise supplemental jurisdiction over the remaining claims. "[T]he federal courts' original jurisdiction over federal questions carries with it jurisdiction over state law claims that 'derive from a common nucleus of operative fact,' such that 'the relationship between [the federal] claim and the state claim permits the conclusion that the entire action before the court comprises but one constitutional case.' " *City of Chicago v. International College of Surgeons*, 522 U.S. 156, 164–65, 118 S.Ct. 523, 139 L.Ed.2d 525 (1997) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966)). Congress has codified these principles in the supplemental jurisdiction statute, which states in relevant part:

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form

part of the same case or controversy under Article III of the United States Constitution.

28 U.S.C. § 1367(a). Section 1367 also allows a court to exercise supplemental jurisdiction over claims against other parties. *See id.* ("Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties."); *see also Mizuna, Ltd. v. Crossland Federal Savings Bank,* 90 F.3d 650, 657 (2d Cir.1996) ("Once the district court exercised original jurisdiction over Mizuna's claim against the Bank ..., it also had supplemental jurisdiction over Mizuna's claim against Royal because the two claims are clearly 'so related' as to be part of the same controversy.").

■ Supplemental jurisdiction is proper in this case because plaintiffs' state law claims form part of the same case or controversy as plaintiffs' federal claim. For example, one of Windswept's defenses to plaintiffs' federal claim is that the release signed by Rosenblatt on behalf of the Ackoffs released Windswept from any claim by the Ackoffs to the renewal copyright. Thus, in order to decide plaintiffs' federal claim, this Court will have to determine whether the contract between Rosenblatt and the Ackoffs gave Rosenblatt the authority to release the Ackoffs' claim. *See Lyndonville Savings Bank & Trust Co. v. Lussier,* 211 F.3d 697, 704 (2d Cir.2000) (noting that supplemental jurisdiction was proper "where presentation of the federal claim necessarily brought the facts underlying the state claim before the court"). In addition, plaintiffs' state law claim for breach of contract alleges that Rosenblatt breached his contract with the Ackoffs by signing the release. Determining whether Rosenblatt breached the contract and, if so, what damages are proper, necessarily involves an examination of the Ackoffs' federal copyright claim. *See id.* (supplemental jurisdiction also was proper "where the facts underlying the federal and state claims substantially overlapped").

Nevertheless, Rosenblatt urges this Court to decline to exercise supplemental jurisdiction over plaintiffs' state law claims for a number of reasons. *First,* the supplemental jurisdiction statute provides that a district court "may decline to exercise supplemental jurisdiction" if the claim "raises a novel or complex issue of State law" or "substantially predominates over the claim or claims over which the district court has original jurisdiction." 28 U.S.C. § 1367(c)(1), (2). Rosenblatt argues that both of these exceptions apply, but neither are availing. Although Rosenblatt contends that the state claims involve complex statute of limitations issues, he fails to describe those issues in any detail. In addition, it is hard to imagine that the statute of limitations questions are so novel and complex or substantially predominate over the federal claim. Indeed, the state and federal claims here are interrelated.

*Second,* Rosenblatt contends that the Ackoffs argued in state court that their claims should remain in that court. To support this argument, Rosenblatt provides an excerpt of the Ackoffs' brief in response to his motion to dismiss their counterclaims. *See* Reply Br., Ex. 3 (Defendants' Brief in Opposition to Plaintiff's Motion to Dismiss Counterclaims). A review of that brief, however, indicates that the Ackoffs simply argued that their counterclaims were not preempted by federal copyright law. In fact, the brief demonstrates that Rosenblatt has made contradictory arguments, because it is clear that the Ackoffs were responding to Rosenblatt's assertion that their counterclaims only could be brought in federal court. The fact that, at best, both parties have made contradictory arguments does not support the conclusion that the exercise of supplemental jurisdiction is unwarranted.

*Third,* Rosenblatt correctly notes that this Court might resolve the federal claim on summary judgment, which counsels against exercising supplemental jurisdiction over related state law claims. *See*

*Carnegie–Mellon University v. Cohill,* 484 U.S. 343, 350 n. 7, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims."); *In re Merrill Lynch Limited Partnerships Litigation,* 154 F.3d 56, 61 (2d Cir.1998) (noting that *Carnegie–Mellon* "is not a mandatory rule"). At this stage of the proceedings, however, it is not clear whether the federal claim will be resolved at the summary judgment stage. Although Windswept is briefing a motion for summary judgment, the outcome of that motion is not a foregone conclusion. Nevertheless, if the Court does grant summary judgment on the federal claim, it will reconsider its decision to exercise supplemental jurisdiction over the state law claims.

■ *Fourth,* Rosenblatt argues that because the parallel state court action is more advanced than this case, this Court should either decline supplemental jurisdiction over the state law claims or stay this action until those claims are resolved in state court. Essentially, Rosenblatt asks this Court to abstain pursuant to *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). The Second Circuit recently summarized the relevant standard:

> Abstention is an extraordinary and narrow exception to a federal court's duty to exercise its jurisdiction. The Supreme Court has recognized that courts should abstain from the exercise of jurisdiction only in the exceptional circumstances where the order to the parties to repair to the state court would clearly serve an important countervailing interest. The test for determining whether abstention is appropriate, first articulated in *Colorado River,* now requires examination of six factors: (1) assumption of jurisdiction over a res; (2) inconvenience of the forum; (3) avoidance of piecemeal litigation; (4) order in which the actions were filed; (5) the law that provides the rule of decision; and (6) protection of the federal plaintiff's rights. The test does not rest on a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of jurisdiction.

*Federal Deposit Insurance Corp. v. Four Star Holding Co.,* 178 F.3d 97, 101 (2d Cir.1999) (quotation marks and citations omitted). The first two factors are irrelevant, because this case does not involve a res and implicates equally convenient forums. The fifth factor helps neither side because, depending on the claim, both state and federal law provide the rule of decision. *See De Cisneros v. Younger,* 871 F.2d 305, 308 (2d Cir.1989) ("When the applicable substantive law is federal, abstention is disfavored, though the inverse proposition will not alone support a surrender of federal jurisdiction.").

Turning to the remaining factors, plaintiffs have strong federal rights that must be protected by this Court. As discussed above, plaintiffs' federal copyright claim provides an independent jurisdictional basis for this Court because that claim requires this Court to construe the Copyright Act. *See Richard Feiner & Co., Inc. v. Polygram Corp.,* 610 F.Supp. 250, 252 (S.D.N.Y.1985) (noting that state court was an inadequate forum in which to litigate copyright claim); *see also Colorado River,* 424 U.S. at 815 n. 21, 96 S.Ct. 1236 ("[T]he presence of a federal basis for jurisdiction may raise the level of justification needed for abstention"). This Court is the proper forum for resolving the copyright claims and, because the state law claims are intertwined with the copyright claim, this factor argues strongly in favor of exercising supplemental jurisdiction and refusing to abstain.

On the other hand, the state court action was filed first and is more advanced. Justice Schlesinger already has dismissed one of the Ackoffs' counterclaims without prejudice (breach of contract), denied Rosenblatt's motion to dismiss two others (unconscionability and lack of consideration), and oversaw the withdrawal with prejudice of the fourth (fraud). But those decisions came at a relatively early stage in the litigation. Discovery in the state case is scheduled to be completed on September 8, 2000, and the parties will have sixty additional days to make any dispositive motions. *See* Reply Br., Ex. 2 (Preliminary Conference Order). Because the state court action is nowhere near final adjudication, this factor provides weak support for abstention. *See Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 21–22, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) (warning against a "mechanical" reading of this factor, which "is to be applied in a pragmatic, flexible manner with a view to the realities of the case at hand"); *Richard Feiner & Co.*, 610 F.Supp. at 252 (where state court only had denied request for injunctive relief, "an overly mechanistic application" of this factor was "not appropriate").

Finally, the danger of piecemeal litigation is high in this case, because the Ackoffs have asserted the same claims against Rosenblatt in both state and federal court. *See De Cisneros*, 871 F.2d at 308 ("Because the state and federal issues are 'inextricably linked,' the risk of [piecemeal] adjudication is real in this case."); *Arkwright–Boston Manufacturers Mutual Insurance Co. v. City of New York*, 762 F.2d 205, 211 (2d Cir.1985) ("Maintaining virtually identical suits in two forums under these circumstances would waste judicial resources and invite duplicative effort."). Nevertheless, Justice Schlesinger partially avoided this danger by dismissing the Ackoff's breach of contract counterclaim without prejudice. Indeed, Justice Schlesinger recognized that this Court likely was the proper forum for resolving that claim:

> [I]t's important to note here for the purposes of the fourth counterclaim, which is breach of contract, that there is a pending matter in federal court which involves not only these two parties but also another party as well . . .

> [T]here's a great deal of dovetailing frankly between the claim and the counterclaims from that action with this action. To this extent only, I am being influenced by the pendency of that case. And that is, that the counterclaim, fourth counterclaim which asserts breach of contract claims, since to a large extent after extensive oral argument here, the determination of whether or not there were one or more breaches by Rosenblatt here the plaintiff to the detriment of the defendants, will very likely be resolved in the disposition of that matter.

> I am going to dismiss the breach of contract counterclaim but without prejudice. And it can be reasserted at any time for any reason, and based on the agreement here by plaintiff's counsel, if it is asserted at a future time, there will be no assertions by the plaintiff in opposition to that breach of contract claim that it violates the statute of limitations. So I am dismissing that again without prejudice, because again, there's an argument that the breach of contract claim at this point is premature. I think there is validity to that argument.

Reply Br., Ex. 1, at 5–7. This danger also has been eliminated for the Ackoffs' fraud claim, which they withdrew with prejudice.[4]

That leaves plaintiffs' unconscionability and lack of consideration claims pending in both state and federal court. Although there is a real danger of piecemeal litigation of those two claims, this Court is

---

4. The natural question arises of whether the same reasons counsel withdrawal of their fraud claim from this case as well.

nonetheless the proper forum for their resolution. Unlike the cases cited above, this case is not particularly complex, *see Arkwright–Boston,* 762 F.2d at 211 ("[T]he instant case involves hundreds of claims and numerous parties, and implicates significant local interests."), nor does it raise the possibility that a decision here will produce inconsistent results, *see De Cisneros,* 871 F.2d at 308 (danger that certain parties in state court would not be bound by a federal decision because they were not parties in federal court). This is the only forum that can fully resolve the dispute, because Windswept is not a party to the state court action. While the potential duplication of effort is regrettable, dismissing plaintiffs' state law claims from this case is not the solution.

## III. CONCLUSION

For the foregoing reasons, Rosenblatt's motion to dismiss plaintiffs' state law claims or stay this action pending resolution of the parallel state court action is DENIED.

SO ORDERED: