POLAR INTERNATIONAL BROKERAGE CORP., Christopher Corroon, Peter Corroon and Faith v. Hyndman, on their own behalf and on behalf of all similarly situated shareholders of Willis Corroon Group, PLC, Plaintiffs,

v.

John REEVE, Thomas Colraine, Brian D. Johnson, George F. Nixon, Kenneth H. Pinkston, Michael R. Rendle, Joseph M. Rodgers, William A. Schreyer, Allen Sykes, Raymond G. Viault, Patrick Lucas, Willis Corroon Group, PLC, Trinity Acquisition, PLC, Kohlberg Kravis Roberts & Co., L.P., Guardian Royal Exchange, Royal & Sunalliance, the Chubb Corporation, the Hartford Financial Services Group, Inc., Travelers Property Casualty Corp., Warburg Dillon Read, Inc., Chase Manhattan Bank and Hsbc Investment Bank, Defendants.

No. 98 CIV. 6915 SAS.

United States District Court,
S.D. New York.

Aug. 8, 2000.

**14**

Samuel P. Sporn, Jay P. Saltzman, Schoengold & Sporn, P.C., New York City, Lawrence Deutsche, Deborah Fleigelbaum, Berger & Montague, P.C., Philadelphia, PA, for Plaintiffs.

Paul C. Curnin, Frederick A. Morton, Jr., Christina E. Paglia, Simpson Thacher & Bartlett, New York City, for Defendants.

Robert C. Myers, Paul B. Carberry, Dewey Ballantine LLP, New York City, for Insurance Company Defendants.

### *MEMORANDUM ORDER*

SCHEINDLIN, District Judge.

In an Opinion and Order dated June 27, 2000, this Court dismissed the above-captioned action in its entirety. *See Polar Int'l Brokerage Corp. v. Reeve*, 108 F.Supp.2d 225 (S.D.N.Y.2000). Plaintiffs' claims pursuant to sections 13(e) and 14(e) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78m(e), 78n(e), were dismissed with prejudice.[1]

---

1. The underlying facts of this dispute are set forth in my June 27 Opinion as well as in an earlier opinion, *see Polar Int'l Brokerage Corp. v. Reeve*, 187 F.R.D. 108 (S.D.N.Y.1999) [hereinafter *"Polar I"*]. Accordingly, they will not be repeated here. Familiarity with both opinions is presumed, and I use terms and abbreviations from those prior opinions without elaboration.

The dismissal of plaintiffs' federal securities law claims with prejudice constituted a "final adjudication" under section 21(D)(c) of the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u–4(c)(1). Accordingly, this Court engaged in Rule 11 fact-finding as mandated by that statute.[2] Based upon a preliminary review of the record, I concluded that it was "overwhelmingly likely that Rule 11 was violated in this case" and ordered plaintiffs' counsel to show cause, within fourteen days, why Rule 11 sanctions should not be imposed against them or their clients. *See Polar*, 108 F.Supp.2d at 250–51.[3] Defendants were permitted to file submissions on the Rule 11 issue within the same fourteen-day period.

On July 12 and 13, 2000, defendants submitted short letter briefs stating that Rule 11 sanctions should be imposed for the reasons set forth in the June 27 Opinion.[4] Defendants also submitted requests for attorneys' fees and expenses incurred in preparing and filing their motions to dismiss plaintiffs' amended complaint.

On July 21, 2000, pursuant to a grant of additional time within which to respond, plaintiffs' counsel filed a memorandum and three supporting affidavits opposing the imposition of Rule 11 sanctions. Finally, on July 26 and July 31, at the direction of the Court, defense counsel filed more detailed billing statements in support of their requests for fees and expenses.

I have carefully studied the parties' submissions and now conclude that Rule 11 sanctions are warranted. My reasons for imposing sanctions, together with the amount of sanctions to be imposed, are discussed in turn below.[5]

## I. Discussion

### A. Plaintiffs' Claims under § 13(e) and § 14(e)

Rule 11(b) states, in pertinent part, as follows:

By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,—

(1) it is not being presented for any improper purpose, such as to harass or to

---

2. Section 21D(c) of the PSLRA, entitled "Sanctions for abusive litigation", provides:

In any private action arising under this chapter, upon final adjudication of the action, the court shall include in the record specific findings regarding compliance by each party and each attorney representing any party with each requirement of Rule 11(b) of the Federal Rules of Civil Procedure as to any complaint, responsive pleading, or dispositive motion.

15 U.S.C. § 78u–4(c)(1). If the court determines that there has been a violation of Rule 11, section 21D(c)(2) imposes mandatory sanctions and adopts a rebuttable presumption that the appropriate sanction for noncompliance "is an award to the opposing party of the reasonable attorneys' fees and other expenses incurred." 15 U.S.C. § 78u–4(c)(3)(A)(i)–(ii).

3. The law firm of Schoengold & Sporn, P.C. is lead counsel for plaintiffs ("Lead Counsel"). In January 1999, a plaintiff class was certified for purposes of a proposed class action settlement. *See Polar I*, 187 F.R.D. at 111 & n. 2; *infra* Part I.B. This Court declined to approve the settlement. *See Polar I*, 187 F.R.D. at 118.

The law firm of Berger & Montague, P.C. represents plaintiff Faith V. Hyndman. Hyndman and her counsel first appeared in the case on October 8, 1999, when the amended complaint was filed.

4. Defendants Willis Corroon, Trinity, KKR, the Individual Defendants and the Investment Bank Defendants are represented by the law firm of Simpson Thacher & Bartlett ("Simpson Thacher"). The Insurance Company Defendants are represented by the law firm of Dewey Ballantine LLP ("Dewey Ballantine").

5. In a letter dated August 3, 2000, plaintiffs' Lead Counsel requested oral argument on the Rule 11 issue. *See* 8/3/00 Letter from Samuel P. Sporn to this Court. In light of the parties' written submissions and the established record in this case, I denied Lead Counsel's request. Such denial did not deprive plaintiffs of an adequate opportunity to be heard before sanctions were imposed. *See Schlaifer Nance & Co. v. Estate of Andy Warhol*, 194 F.3d 323, 335–36 (2d Cir.1999) (finding that where parties' had submitted written responses, oral argument was requested after the last response was filed and the district court's decision was based on facts in the record, the failure to grant oral argument did not deprive the sanctioned party of an opportunity to be heard).

cause unnecessary delay or needless increase in the cost of litigation;

(2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law; [and]

(3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

Fed.R.Civ.P. 11(b).

■■■ "An argument constitutes a frivolous legal position for purposes of Rule 11 sanctions if, under an objective standard of reasonableness, it is clear ... that there is no chance of success and no reasonable argument to extend, modify or reverse the law as it stands." *Morley v. Ciba–Geigy Corp.*, 66 F.3d 21, 25 (2d Cir.1995) (internal quotations omitted) (alteration in original). Plaintiffs' § 13(e) claim was premised on the argument that Trinity was an "affiliate" of Willis Corroon at the time of the challenged transaction. Although this Court rejected that argument, it cannot be said that plaintiffs' claim of affiliate liability was unwarranted by existing law. Indeed, there is a dearth of precedent addressing claims for affiliate liability under § 13(e). Absent clear precedent, it would be inappropriate to conclude that plaintiffs' position presented "no chance of success and no reasonable argument to extend, modify or reverse the law as it stands." [6]

■■ With respect to plaintiffs' § 14(e) claim, I reach the opposite conclusion. By filing a claim under that statute which was both legally frivolous and without factual support, plaintiffs' counsel, including Lead Counsel and counsel for Hyndman, violated Rules 11(b)(2) and (b)(3).[7]

The threshold requirement of a § 14(e) claim is misrepresentation or omission of a material fact. *See Polar*, 108 F.Supp.2d at 235–36. However, the theories of misrepresentation and omission asserted by plaintiffs in their amended complaint were clearly insufficient to survive dismissal under well-settled legal principles. For example, although plaintiffs identified several statements in the tender offer documents as fraudulent, they failed to explain how or why those statements were fraudulent, a clear violation of the pleading requirements of Rule 9(b). *See id.* at 239–43. Equally unreasonable were plaintiffs' attempts to allege fraudulent omissions based upon (i) documents that had been publicly filed and disseminated prior to the Offer, *see id.* at 238–40; (ii) unsupported and conclusory assertions that defendants concealed "internal projections" and manipulated financial data, *see id.* at 242–44; and (iii) an attenuated prior relationship between a KKR-related entity and Deutsche Bank's parent company, *see id.* at 244–45. Morever, plaintiffs' repeated attempts to bolster their objectively unreasonable claims of misstatement and omission by exaggerating, mischaracterizing and ignoring the plain language of relevant documents, *see id.* at 241–42 & n. 26, is sanctionable conduct under Rule 11(b)(3) which prohibits counsel from making unsupported factual contentions.

In *Polar I*, I explicitly warned plaintiff Polar that its § 14(e) claim "appear[ed] weak" and was unlikely to survive dismissal. *See Polar International Brokerage Corp. v. John Reeve*, 187 F.R.D. 108, 115 (S.D.N.Y. 1999) Among other things, I stated that

in support of its allegations that defendants misrepresented the performance of [Willis Corroon] in the offering materials, plaintiff cites to statements and information showing that the Company was strong and profitable. Every document on which plaintiff relies, however, is a document

---

6. Of course, it would have been helpful had plaintiffs raised the affiliate argument in their amended complaint rather than solely in response to defendants' dismissal motions. *See Polar*, 108 F.Supp.2d at 247 n. 36, 249–50 & n. 43.

7. The frivolous and unsupported § 14(e) claim is clearly a result of error by counsel rather than dishonesty or misconduct on the part of plaintiffs themselves. Moreover, "[m]onetary sanctions may not be awarded against a represented party for a violation of [Rule 11](b)(2)." Fed.R.Civ.P. 11(c)(2)(A).

publicly disseminated by the Company, which belies the contention that defendants were attempting to misrepresent the condition of the Company.

*Id.* Despite this Court's warning and clear legal precedent to the effect that there is no obligation to disclose information already in the public domain, plaintiffs included identically flawed allegations in their amended complaint. Plaintiff Polar was also on notice that "if [it chose] to proceed, it should be mindful of the PSLRA's requirement of a mandatory Rule 11 review at the conclusion of any case." *Id.* at 119 n. 10.[8]

In defending their decision to proceed under § 14(e), plaintiffs' counsel advances only two arguments, neither of which is persuasive.

*First,* plaintiffs' counsel contends that "plaintiffs reasonably believed they had valid claims concerning non-disclosure of the Sedgwick transaction." Plaintiffs' Corrected Memorandum to Show Cause Why Sanctions Should Not be Imposed Under Rule 11 ("Pls.Mem.") at 9. Briefly, in their opposition to defendants' motions to dismiss, plaintiffs alleged—for the first time—that defendants should have informed Willis Corroon shareholders that Marsh & McClennan acquired Sedgwick, a competitor of Willis Corroon, at a 58% premium. The June 27 Opinion rejected this claim finding that

> [e]ven assuming plaintiffs had properly pleaded this allegation in their Complaint, defendants' failure to inform shareholders of a publicly disclosed acquisition that occurred after the commencement of the [challenged tender] Offer cannot state a claim for fraud. Plaintiffs cite no authority—nor is the Court aware of any authority—which *would require defendants to amend the Offer Documents and recirculate those documents to shareholders in order to disclose the unrelated Sedgwick acquisition which was widely reported in the media. See, e.g.,* Joseph B. Treaster, *Marsh & McLennan to Buy Big British Insurance Broker,* N.Y. Times, Aug. 26,

1998, § D at 2. *See also Brickman [v. Tyco Toys Inc.,* 731 F.Supp. 101, 104 (S.D.N.Y. 1990) ] (no duty to disclose information already in the public domain); *Rodman [v. Grant Found.,* 460 F.Supp. 1028, 1035 (S.D.N.Y.1978) ] (same).

*Polar,* 108 F.Supp.2d at 245–46.

Plaintiffs' counsel now cites a series of cases which stand for the unremarkable and entirely inapposite proposition that "a duty to update 'may exist when a statement, reasonable at the time it is made, becomes misleading because of a subsequent event.'" Pls. Mem. at 10 (quoting *In re IBM Corporate Secs. Litig.,* 163 F.3d 102, 110 (2d Cir. 1998)); *see also id.* (quoting *Kamerman v. Steinberg,* 123 F.R.D. 66, 73 (S.D.N.Y.1988), for the proposition that " 'a particular duty to correct a specific prior statement exists as long as traders in the market could reasonably rely on that statement' "). In the instant case, plaintiffs fail to allege any "specific prior statement" that was rendered misleading in light of the Sedgwick acquisition. Accordingly, I find no basis under existing law for counsels' assertion that defendants had a duty to disclose the Sedgwick acquisition.

*Second,* counsel argues that plaintiffs' allegations regarding defendants' failure to disclose certain unidentified "internal projections" state a colorable claim under § 14(e). Pls. Mem. at 14. As set forth in the June 27 Opinion, however, "[s]uch vague and bare references to 'internal projections' and 'inside information' fail to satisfy any pleading standard, let alone the heightened standard set forth in Rule 9(b)." *Polar,* 108 F.Supp.2d at 243. In its Rule 11 papers, plaintiffs' counsel contends that because Willis Corroon experienced dramatically increased revenues following its acquisition by Trinity, defendants must necessarily have possessed positive internal projections that they failed to disclose. *See* Pls. Mem. at 13–14. Not only is this a clearly impermissible attempt to plead fraud

---

8. In addition, defendants repeatedly urged plaintiffs to voluntarily withdraw their amended complaint and warned that, if plaintiffs failed to do so, they would seek sanctions. *See* 11/2/99 Letter from Robert C. Myers of Dewey Ballantine to Samuel Sporn of Schoengold & Sporn, Ex. A to 7/12/00 Affidavit of Robert C. Myers ("Myers Aff. I"); 12/10/99 Letter from Paul C. Curnin of Simpson Thacher to Sporn, Ex. A to 7/11/00 Affidavit of Paul C. Curnin ("Curnin Aff.").

by hindsight, but it in no way cures the patently obvious Rule 9(b) problem.

Even assuming that plaintiffs' allegations regarding the Sedgwick acquisition and the positive internal projections were colorable for purposes of Rule 11, those allegations comprise only the smallest part of plaintiffs' § 14(e) claim as pleaded. Put simply, counsel has failed to account for the bulk of its § 14(e) allegations which are objectively untenable—and factually unsupported—for the reasons set forth above and in my June 27 Opinion.

### B. Lead Counsel's Prior Representations

■ With respect to Lead Counsel, there is an additional and more troubling ground for the imposition of Rule 11 sanctions. In March 1999, Lead Counsel represented to this Court in both written submissions and during oral argument that the Trinity Offer—the challenged tender offer at the heart of plaintiffs' suit—was neither inadequate nor unfair. Specifically, plaintiffs' counsel unequivocally represented that

> [w]hile Plaintiff originally contended that holders of the ADRs were to receive an inadequate consideration for their holdings, discovery and examination of the documents, methodology, and witnesses adduced no evidence that said consideration was unfair or inadequate. The financial expert engaged by Plaintiff's Counsel has likewise concluded that such consideration is not inadequate and unfair in the circumstances.

Notice of Class Action Determination, Proposed Settlement and Hearing Thereon, Ex. G to 3/3/99 Affidavit of Samuel P. Sporn in Support of Proposed Settlement ("Sporn Aff."), at 3. Now, however, Lead Counsel takes precisely the opposite position arguing to this Court that the Trinity Offer is "grossly inadequate" and unfair. There is simply no innocent, nonsanctionable explanation for counsel's conflicting assertions to this Court and to the plaintiff class they purport to represent. Either plaintiffs' counsel violated Rule 11(b)(3) in March 1999 when they repeatedly stated—based upon their examination of documents and consultation with financial experts—that the Tender Offer was fair, or counsel violated Rule 11(b)(3) in October 1999 by filing an amended complaint alleging that the Tender Offer was unfair.

Moreover, Lead Counsel leaves this Court with little choice but to conclude that it has improperly pursued this litigation, seeking personal financial remuneration in violation of Rule 11(b)(1). To begin, Lead Counsel advocated a settlement agreement pursuant to which the plaintiff class would receive no money, while counsel would receive $200,000. As I stated in my opinion rejecting the proposed settlement offer:

> The implication is that plaintiff's counsel, in reviewing documents and interviewing personnel of Willis Corroon and Deutsche Bank, has uncovered no evidence of wrongdoing by defendants. This argument, taken to its logical conclusion, is that the claims have no merit. If this is true, counsel is now seeking compensation in the form of attorney's fees for pursuing a meritless case. If this conclusion is not correct, and the case does have merit, the class has received virtually nothing of value in exchange for releasing any claims arising out of the transaction.

*Polar I*, 187 F.R.D. at 119. In other words, by agreeing to a settlement under which the plaintiff class would receive nothing other than the assurance that defendants behaved properly, Lead Counsel was either pursuing meritless litigation in order to force a settlement with respect to attorneys' fees—precisely the behavior the securities laws and Rule 11 abhor—or, equally abhorrent, Lead Counsel was willing to jettison the meritorious claims of its clients in order to obtain attorneys' fees.[9]

In its Rule 11 papers, Lead Counsel characterizes its prior representations to this Court as "settlement" talk and argues that, as a result, "any representation made by

---

9. Only two avenues remained available to plaintiff following my rejection of the settlement. Plaintiffs could have voluntarily discontinued the action, or plaintiffs could have filed an amended complaint that stated one or more federal claims sufficient to survive dismissal. Plaintiffs did neither; instead they continued to pursue meritless litigation in violation of Rule 11.

plaintiffs or their counsel concerning the fairness or unfairness of the acquisition of Willis Corroon by KKR should not be held against them." Pls. Mem. at 16. Lead Counsel misapprehends the nature of its representations.

At the time the parties approached this Court seeking approval of their settlement, they had already "settled" the case. Thus, Lead Counsel's representations regarding the fairness of the tender offer were not made in the course of settlement. *See* Fed. R.Evid. 408 ("Evidence of conduct or statements in compromise *negotiations* is ... not admissible." (emphasis added)). Rather, they were on-the-record statements, made subsequent to settlement and in an effort to convince this Court to approve a class action settlement. As such, they are clearly binding on Lead Counsel.

More important, Lead Counsel owed a fiduciary duty to members of the putative class. *See In re Avon Secs. Litig.*, 91 Civ. 2287, 1998 WL 834366, *10 & n. 5 (S.D.N.Y. 1998). The Second Circuit has described that duty as follows:

> One accepting employment as counsel in a class action does not become a class representative through simple operation of the private enterprise system. Rather, both the class determination and designation of counsel as class representative come through judicial determinations, and the attorney so benefitted serves in something of a position of public trust.

*Alpine Pharmacy, Inc. v. Chas. Pfizer & Co.*, 481 F.2d 1045 (2d Cir.1973). Not only did Lead Counsel make representations regarding the fairness of the tender offer to this Court, it made the same representations to the plaintiff class. *See Polar*, 108 F.Supp.2d at 234 n. 18. As a fiduciary, Lead Counsel was obligated to issue those statements in good faith and with the greatest care. It cannot now simply disclaim its prior conduct as mere "settlement" talk. Nor can it escape the consequences of breaching its position of trust with respect to this Court and the class.

## II. Amount of Sanctions Imposed

### A. Defense Counsels' Fee Requests

Simpson Thacher seeks fees of $78,182.50. *See* Curnin Aff. ¶ 3. This figure represents 241.25 hours of legal work engaged in by five attorneys. *See id.;* 7/31/00 Letter from Curnin to this Court (attaching billing statements). Simpson also seeks reimbursement for expenses totaling $10,000. *See* Curnin Aff. ¶ 3.

Dewey Ballantine seeks fees of $40,358.75. *See* Myers Aff. I ¶ 3. This figure represents 127 hours of legal work engaged in by two attorneys. *See id.;* 7/26/00 Affidavit of Robert C. Myers (attaching billing statements). Dewey also seeks reimbursement for expenses totaling $4,459.04. *See* Myers Aff. I ¶ 3.

I have carefully reviewed defense counsels' affidavits and billing statements. I find that with one exception discussed below, the requested attorneys' fees and expenses are reasonable. The time and cost expended in researching and drafting the relevant dismissal motions was more than warranted in light of plaintiffs' numerous, convoluted and ever-changing allegations. Similarly, the rates charged by Simpson Thacher and Dewey Ballantine are commensurate with the customary legal fees charged in the Southern District of New York.

That said, I reduce Dewey Ballantine's fee request by $1511.25. Those particular fees were generated after the motions to dismiss were fully briefed, and sanctions here are limited solely to those fees and expenses incurred in seeking dismissal of plaintiffs' amended complaint.

### B. Sanctions

In their amended complaint, plaintiffs asserted five claims, two under the federal securities laws and three under state law. Because plaintiffs' § 13(e) claim was colorable, I reduce the award of attorneys' fees and expenses by one-fifth, or 20 percent.[10] Accordingly, sanctions are imposed as follows. Plaintiffs' counsel must pay (i)

---

**10.** Sanctions are imposed for the state law claims because they were entirely pendent to failed federal claims. Plaintiffs could have pursued those claims in state court. Indeed, the breach of fiduciary duty claims may have been their strongest.

Simpson Thacher 80% of $88,182.50, or $70,546; and (ii) Dewey Ballantine 80% of $43,306.79, or $34,645.43. This amount is awarded 70% against Lead Counsel and 30% against counsel for Hyndman, in light of the fact that Hyndman's counsel did not join the litigation until the second amended complaint was filed. Payment shall be made within twenty days from the date of this Order.

### III. Conclusion

For the foregoing reasons, Rule 11 sanctions are imposed against plaintiffs' counsel in the manner and pursuant to the schedule set forth above. The Clerk of the Court is directed to close this case.

SO ORDERED.