**POLAR INTERNATIONAL BROKER-AGE CORP., Christopher Corroon, Peter Corroon and Faith V. Hyndman, on their own behalf and on behalf of all similarly situated shareholders of Willis Corroon Group, PLC, Plaintiffs,**

v.

**John REEVE, Thomas Colraine, Brian D. Johnson, George F. Nixon, Kenneth H. Pinkston, Michael R. Rendle, Joseph M. Rodgers, William A. Schreyer, Allen Sykes, Raymond G. Viault, Patrick Lucas, Willis Corroon Group, PLC, Trinity Acquisition, PLC, Kohlberg Kravis Roberts & Co., L.P., Guardian Royal Exchange, Royal & Sunalliance, the Chubb Corporation, the Hartford Financial Services Group, Inc., Travelers Property Casualty Corp., Warburg Dillon Read, Inc., Chase Manhattan Bank and HSBC Investment Bank, Defendants.**

No. 98 CIV. 6915 SAS.

United States District Court,
S.D. New York.

Sept. 19, 2000.

Samuel P. Sporn, Jay P. Saltzman, Schoengold & Sporn, P.C., New York City, Lawrence Deutsche, Deborah Fleigelbaum, Berger & Montague, P.C., Philadelphia, PA, for Plaintiffs.

Paul C. Curnin, Frederick A. Morton, Jr., Christina E. Paglia, Simpson Thacher & Bartlett, New York city, for Defendants.

Robert C. Myers, Paul B. Carberry, Dewey Ballantine LLP, New York City, for Insurance Company Defendants.

## MEMORANDUM ORDER

SCHEINDLIN, District Judge.

In a Memorandum Order dated August 8, 2000, this Court imposed sanctions against plaintiffs' counsel for violations of Rule 11 in connection with the above-captioned securities fraud action. *See Polar Int'l Brokerage Corp. v. Reeve*, 196 F.R.D. 13 (S.D.N.Y.2000) [hereinafter *"Polar III "*].[1] Plaintiffs' counsel now seeks, pursuant to Rule 6.3 of the Local Civil Rules for the United States District Courts for the Southern and Eastern Districts of New York, reconsideration of the August 8 Order.[2] With two exceptions, reconsideration is denied.

## I. Legal Standard

"[R]econsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir.1995). Motions for reconsideration must be narrowly construed and the standard strictly applied "to discourage litigants from making repetitive arguments on issues that have been thoroughly considered by the court", "to ensure finality" and "to prevent the practice of a losing party examining a deci-

---

1. In an Opinion and Order dated June 27, 2000, this Court dismissed plaintiffs' action in its entirety. *See Polar Int'l Brokerage Corp. v. Reeve*, 108 F.Supp.2d 225 (S.D.N.Y.2000) [hereinafter *"Polar II "*]. Plaintiffs' claims pursuant to sections 13(e) and 14(e) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78m(e), 78n(e), were dismissed with prejudice. The dismissal of plaintiffs' federal securities law claims with prejudice constituted a "final adjudication" under section 21(D)(c) of the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u–4(c)(1). Accordingly, this Court engaged in Rule 11 factfinding as mandated by that statute. *See Polar III*, 196 F.R.D. 13.

2. The law firm of Schoengold & Sporn, P.C. is lead counsel for plaintiffs ("Lead Counsel"). The law firm of Berger & Montague, P.C. ("Berger & Montague") represents plaintiff Faith V. Hyndman. Hyndman and her counsel first appeared in the case on October 8, 1999, when the amended complaint was filed.

On August 22, 2000, Lead Counsel and Berger & Montague (collectively "plaintiffs' counsel") filed separate motions for reconsideration. *See* [Lead Counsel's] Memorandum of Law in Support of Plaintiffs' Motion for Reconsideration ("Pl.Mem."); Memorandum of Berger & Montague, P.C. in Support of Motion for Reconsideration ("B & M Mem."). In addition, Berger & Montague joins the memorandum of law filed by Lead Counsel. *See* B & M Mem. at 1 n.1.

sion and then plugging the gaps of the lost motion with additional matters". *Range Road Music, Inc. v. Music Sales Corp.*, 90 F.Supp.2d 390, 391–92 (S.D.N.Y.2000) (quotation marks and citations omitted).

## II. Discussion [3]

The August 8 Order concluded that (i) sanctions were not warranted with respect to plaintiffs' § 13(e) claim because that claim, while meritless, was not legally frivolous for purposes of Rule 11, *see Polar III*, 196 F.R.D. 13, 16; (ii) sanctions were warranted with respect to plaintiffs' § 14(e) claim because that claim was both legally frivolous and without factual support in violation of Rules 11(b)(2) and (b)(3), *see id.* at 16–18; and (iii) sanctions against Lead Counsel were warranted on the additional ground that Lead Counsel made conflicting assertions to both this Court and the plaintiff class concerning the fairness of the tender offer at the heart of plaintiffs' suit, *see id.* at 18–20. Pursuant to these findings, the Court assessed sanctions against plaintiffs' counsel in the total amount of $105,191.43. *See id.* at 19–20. This figure represents 80% of the reasonable attorneys' fees and expenses incurred by defendants' counsel in seeking dismissal of the amended complaint. *See id.*[4] I reduced the requested fees by 20% based upon my determination that plaintiffs' § 13(e) claim—one of five claims asserted—was colorable for purposes of Rule 11. *See id.* Finally, sanctions were imposed 70% against Lead Counsel and 30% against Berger & Montague, counsel for Hyndman, in light of the fact that Hynd-

man did not join the litigation until the amended complaint was filed. *See id.*

Plaintiffs' counsel now seeks reconsideration of the August 8 Order citing various grounds, three of which are briefly addressed below.[5]

### A. Limited Role of Berger & Montague

■ Berger & Montague urges this Court to strike—or, alternatively, to significantly reduce—the sanctions imposed against it. Berger & Montague argues that this Court did not "consider [its] limited role and its actual involvement in [plaintiffs'] case". B & M Mem. at 1–2.

As evidenced by the allocation of sanctions 30% against Berger & Montague and 70% against Lead Counsel, this Court certainly considered Berger & Montague's relatively limited role in the litigation. However, the Court did not fully appreciate to what extent Berger & Montague acted solely at the direction of Lead Counsel. *See* B & M Mem. at 2–4. The Court was similarly unaware that Berger & Montague was "not made privy to ... certain matters relevant to the imposition of sanctions". *Id.* at 4. Specifically, the August 8 Order references several letters in which defendants encouraged plaintiffs to voluntarily withdraw their amended complaint and warned that, if plaintiffs failed to do so, defendants would seek sanctions. *See Polar III*, 196 F.R.D. at 16 n. 8. In its motion for reconsideration, Berger & Montague explains that

the cited warning letters ... from defense counsel were addressed only to Lead Counsel, not to Berger & Mon-

---

**3.** The underlying facts and procedural history of this dispute are set forth in the June 27 and August 8 opinions, as well as in an earlier opinion. *See Polar Int'l Brokerage Corp. v. Reeve*, 187 F.R.D. 108 (S.D.N.Y.1999) [hereinafter *"Polar I"*]. Accordingly, they are not repeated here. Familiarity with all three opinions is assumed, and I use terms and abbreviations from those prior opinions without elaboration.

**4.** Defendants Willis Corroon, Trinity, KKR, the Individual Defendants and the Investment Bank Defendants are represented by the law firm of Simpson Thacher & Bartlett ("Simpson Thacher"). The Insurance Company Defendants are represented by the law firm of Dewey Ballantine LLP.

**5.** The remaining arguments for reconsideration advanced by plaintiffs' counsel are sufficiently meritless to warrant denial without further discussion.

tague. Moreover, Lead Counsel did not transmit these letters to Berger and Montague. *Berger & Montague neither received nor had knowledge of the contents of these letters.* Notably, the letter from [defendants' counsel] Paul C. Curnin [of Simpson Thacher] states, "I have explained in detail why your allegations are baseless . . . ." Berger & Montague was unaware not only of the letter Curnin sent but also of the information provided to Lead Counsel referred to by Curnin.

B & M Mem. at 4 (emphasis in original).[6]

Berger & Montague signed its name to the amended complaint and various other materials filed with this Court. Therefore, regardless of the firm's limited knowledge and attenuated role, some amount of sanctions is warranted. However, after reweighing the equities in light of Berger & Montague's motion, I grant that firm's request for a reduction in the sanctions previously imposed. Accordingly, the amount of sanctions assessed against Berger & Montague is hereby reduced from 30% to 10%. The 20% difference is not added to Lead Counsel's share for reasons discussed *infra* Part II.C.

### B. No Inconsistency Between § 13(e) and § 14(e) Rulings

■ Plaintiffs' counsel also seeks reconsideration based upon an alleged inconsistency between my treatment of plaintiffs' § 13(e) and § 14(e) claims under Rule 11. *See* Pl. Mem. at 7–11. In essence, plaintiffs' counsel contends that because this Court found plaintiffs' § 13(e) claim colorable and thus nonsanctionable, plaintiffs' § 14(e) claim must be deemed colorable and nonsanctionable as well. *See id.* at 7. Counsel's position is untenable.

In its motion, plaintiffs' counsel states:

Here, the Court has determined that there was a colorable basis to assert a

13(e) claim and that under 13(e), the Tender Offer *had* to disclose—but did not—critical value information (e.g.[,] going concern value and liquidation value.) These significant omissions which give rise to a 13(e) claim similarly give rise to a colorable 14(e) claim.

*Id.* (emphasis in original). Counsel's assertions misapprehend this Court's prior holdings as well as basic differences between disclosure under § 13(e) and disclosure under § 14(e).

Section 13(e) requires that "issuers or affiliates" engaged in "going private" transactions provide shareholders with certain disclosure information. *See* 15 U.S.C. § 78m(e). Rule 13e–3 lists the specific information to be disclosed. *See* 17 C.F.R. § 240.13(e)–3.

Plaintiffs' § 13(e) claim was premised on the theory that defendant Trinity was an "affiliate" of defendant Willis Corroon at the time of the challenged transaction. In *Polar II*, this Court rejected plaintiffs' "affiliate" argument finding, as a matter of law, that Trinity was not an affiliate of Willis Corroon. *See* 2000 WL 827667, at *18. When considering the issue of sanctions, however, this Court noted the "dearth of precedent addressing claims for affiliate liability under § 13(e)" and held that "[a]bsent clear precedent, it would be inappropriate to conclude that plaintiffs' position 'presented no chance of success and no reasonable argument to extend, modify or reverse the law as it stands.' " *See Polar III*, 196 F.R.D. at 16. Thus, despite the contrary argument of plaintiffs' counsel, this Court never "determined" that plaintiffs' allegations regarding defendants' failure to disclose "critical value information" stated a colorable claim under § 13(e). Rather, my holding with respect to § 13(e) and Rule 11 sanctions was limited to the narrow issue of plaintiffs' affiliate

---

**6.** Berger & Montague first learned of defendants' letters in connection with the Rule 11

sanctions review. *See* B & M Mem. at 4–5.

liability theory.[7] Because affiliate status is wholly irrelevant to claims under § 14(e), my finding that plaintiffs' § 13(e) affiliate theory was not entirely frivolous can have no bearing on the question of whether plaintiffs' § 14(e) claim withstands Rule 11 scrutiny.

In addition, even assuming this Court had determined that plaintiffs' allegations of nondisclosure under § 13(e) were colorable, such a finding would again have no impact on a Rule 11 analysis of plaintiffs' § 14(e) claim. As set forth above, and as described more fully in *Polar II*, Rule 13e–3 includes a list of specific information regarding the substantive fairness of a tender offer that must be disclosed in a limited subset of business combinations, namely "going private" transactions. *See* 17 C.F.R. § 240.13(e)–3. Plaintiffs' allegations of nondisclosure under § 13(e) charge defendants with failing to provide shareholders with the substantive information mandated by Rule 13e–3.

In contrast, plaintiffs' claims under § 14(e) charge defendants with making material misstatements and omissions regarding (i) Willis Corroon's financial condition; (ii) the relationship between KKR and Deutsche Bank; and (iii) the acquisition of Sedgewick for a 58% premium. Thus, both claims involve different allegations of wrongdoing and, more important, both statutes require different types of disclosure. Moreover, plaintiffs' § 14(e) claim was dismissed, and Rule 11 sanctions imposed, based upon plaintiffs' utter failure to comply with the pleading requirements set forth in Federal Rule of Civil Procedure 9(b) and the PSLRA. Plaintiffs' colorable allegations of nondisclosure

under § 13(e) and Rule 13e–3 cannot cure plaintiffs' unreasonable violations of settled pleading standards in connection with their claim under § 14(e).

### C. Plaintiffs' Action was Primarily Frivolous

■ In *Simon DeBartolo Group, L.P. v. The Richard E. Jacobs Group, Inc.*, 186 F.3d 157 (2d Cir.1999), the Second Circuit set forth general guidelines for the imposition of Rule 11 sanctions. Of relevance here, the *DeBartolo* court stated:

> There is often a significant difference between a wholly unwarranted lawsuit and a single unwarranted claim included in an otherwise non-frivolous lawsuit. The former requires the court and one or more defendants to incur all the unnecessary expenditure of time and needless economic, emotional and other costs associated with engaging in litigation.

*Id.* at 177.

Relying upon the above-quoted language from *DeBartolo*, plaintiffs' counsel seeks reconsideration arguing that sanctions are inappropriate because the majority of plaintiffs' claims were, in fact, colorable:

> Here substantially, all of the claims were colorable claims. Moreover, the colorable claims challenged the "fairness" of the challenged Tender Offer as did the 14(e) claim found to be frivolous. As a result, the expenditure of time and expense defending the 14(e) claim could only have increased costs in a de minimis amount such that sanctions are not appropriate.

---

7. Indeed, had this Court reached the issue of nondisclosure of "critical value information", it would likely have concluded that plaintiffs' § 13(e) claim was in fact frivolous for purposes of Rule 11. Plaintiffs' counsel seems to have ignored this Court's prior observation that

> [E]ven if Trinity was an affiliate at the time of the Offer such that it was subject to the disclosure requirements of § 13(e), it is unlikely that any of the other [21] defendants

would be similarly obligated to make disclosures under the going-private statute which applies only to acquiring issuers or affiliates. Similarly, assuming again that Trinity was an affiliate at the time of the Offer, plaintiffs' § 13(e) claim is still almost certainly meritless because it appears that defendants have, in fact, provided adequate disclosure under the statute.

*Polar II*, 108 F.Supp.2d at 248 n. 41.

Pl. Mem. at 6. Counsel's argument is, once again, frivolous.

*First,* counsel persistently refuses to recognize basic differences between the two federal statutes at issue— § 13(e) and § 14(e). *Cf. supra* Part II.B. As this Court explicitly noted in *Polar II,* "the substantive fairness of the terms of a tender offer is irrelevant under § 14(e)". 108 F.Supp.2d at 245 (citing cases). Thus, by definition, plaintiffs' § 14(e) claim could not have "challenged the 'fairness' of the tender offer".

*Second,* and more important, even the most cursory glance at the amended complaint reveals that the vast bulk of substantive allegations set forth therein concern plaintiffs' § 14(e) claim; plaintiffs' § 13(e) and state law claims compose only a small fraction of the allegations asserted.

To illustrate, the amended complaint includes 48 paragraphs, or 19 pages, under the heading "substantive allegations". *See* Amended Complaint ¶¶ 29–77. Of that, 38 paragraphs, or approximately 17 pages, set forth allegations primarily—if not exclusively—relevant to plaintiffs' § 14(e) claim. *See id.* ¶¶ 31–34, 37–39, 44–66, 69–77. Contrary to the representations of plaintiffs' counsel, consideration of the amended complaint as a whole demands, rather than rebuts, the imposition of sanctions. The essence of plaintiffs' suit was their claim under § 14(e) forcing defendants, as well as this Court, to expend a great deal of time, energy and resources on frivolous and unwarranted allegations.

*Third,* this Court made no finding that plaintiffs' three state law claims—two for breach of fiduciary duty and one for common law fraud—were colorable. Although my August 8 Order noted that plaintiffs' breach of fiduciary duty claim "may have been their strongest", it did so in an effort to highlight counsel's ill-advised decision to proceed in a federal rather than state forum. *See Polar III,* 196 F.R.D. at 20 n. 10.

 That said, plaintiffs' counsel correctly notes that this Court did not make specific findings of fact under Rule 11 with respect to plaintiffs' state law fiduciary duty claims. *See* Pl. Mem. at 2–3. As a result, the 20% reduction in sanctions assessed against Berger & Montague, *see supra* Part II.A., is not allocated to Lead Counsel. Lead Counsel is responsible for 70%, rather than 90%, of the total sanctions previously imposed, and the 20% difference—which is, in effect, a reduction in the sanctions awarded to defendants—represents an adjustment in the award based on the two state law fiduciary duty claims.[8]

## III. Conclusion

For the foregoing reasons, reconsideration is granted and the sanctions are awarded as follows: Rule 11 sanctions in an amount of $105,191.43 are awarded 10% against Berger & Montague, rather than 30% as set forth in the August 8 Order. In addition, Lead Counsel remains responsible for 70% of the sanctions award, and the 20% difference shall be considered a reduction based upon plaintiffs' state law fiduciary duty claims which were not expressly deemed frivolous under Rule 11.

SO ORDERED.

---

**8.** Because plaintiffs' allegations of common law fraud are identical to their allegations of fraud under § 14(e), my findings of fact under Rule 11 with respect to the federal claim are equally applicable to the state claim. Therefore, a reduction in sanctions for plaintiffs' common law fraud claim is unwarranted.