Susan ACKOFF–ORTEGA, Cele Ackoff, and Jon Ackoff, Plaintiffs,

v.

WINDSWEPT PACIFIC ENTERTAINMENT CO. (INC.), EMI Virgin Music, Inc., and Richard Rosenblatt, Defendants.

No. 99 CIV. 11710(SAS).

United States District Court, S.D. New York.

Oct. 11, 2000.

Frederick F. Greenman, Jr., Deutsch Klagsbrun & Blasband, New York City, for Plaintiffs.

Scott L. Baker, New York City, for Defendant Windswept Pacific Entertainment Co.

Howard Gotbetter, New York City, for Defendant Richard Rosenblatt.

## OPINION AND ORDER

SCHEINDLIN, District Judge.

Plaintiffs Susan Ackoff–Ortega, Cele Ackoff and Jon Ackoff are relatives of deceased songwriter Robert Ackoff who coauthored the hit tune "Mony, Mony". Plaintiffs bring this action against defendants Windswept Pacific Entertainment Co. (Inc.) ("Windswept"), EMI Virgin Music, Inc. ("EMI"), and Richard Rosenblatt seeking, among other things, a declaratory judgment that Ackoff–Ortega—not defendants—owns the share of the renewal copyright in "Mony, Mony" attributable to Robert Ackoff. Plaintiffs assert claims under both federal copyright law and state contract law.

Windswept and EMI[1] now move, pursuant to Federal Rule of Civil Procedure 12(c), for judgment on the pleadings. For the reasons that follow, the corporate defendants' motion is granted in its entirety.

**1.** Throughout this Opinion, Windswept and EMI are referred to collectively as "Windswept" or the "corporate defendants." Plaintiffs are sometimes referred to collectively as "the Ackoffs."

**2.** The background of this case is largely set forth in an opinion issued by the Court on

## I. Legal Standard

Rule 12(c) provides for judgment on the pleadings "where material facts are undisputed and where a judgment on the merits is possible merely by considering the contents of the pleadings." *Sellers v. M.C. Floor Crafters, Inc.,* 842 F.2d 639, 642 (2d Cir.1988). The pleadings include the complaint, the answer and any written instruments attached as exhibits. *See* Fed. R.Civ.P. 10(c) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."). The Rule 12(c) standard is the same as that applied under Rule 12(b)(6). *See Sheppard v. Beerman,* 18 F.3d 147, 150 (2d Cir.1994). "Therefore, in reviewing a motion for a judgment on the pleadings, a court must assume the facts alleged by the plaintiff to be true and must liberally construe them in the light most favorable to the plaintiff." *AD/SAT a Div. of Skylight, Inc. v. Associated Press,* 885 F.Supp. 511, 514 (S.D.N.Y.1995). " BDll contravening assertions in the defendants' Answer are taken to be false." *Morris Elecs. of Syracuse, Inc. v. Mattel, Inc.,* 595 F.Supp. 56, 58 (N.D.N.Y.1984). A court should not dismiss the complaint "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [its] claim which would entitle [it] to relief." *Sheppard,* 18 F.3d at 150.

## II. Background[2]

Robert Ackoff, professionally known as "Bo Gentry", was a songwriter who died intestate in 1983. *See* Amended Complaint ¶¶ 2, 3. At the time of his death, Robert Ackoff was unmarried and childless. *See id.* ¶ 3. Cele Ackoff is Robert Ackoff's mother, and Jon Ackoff and Susan

June 5, 2000. *See Ackoff–Ortega v. Windswept Pac. Entertainment Co.,* 98 F.Supp.2d 530, 531–533 (S.D.N.Y.2000) (*"Ackoff I"*); *see also infra* Part II. However, resolution of the instant motion requires a more detailed recitation of the facts than that included in my prior decision.

Ackoff–Ortega are Cele Ackoff's surviving children. *See id.* ¶ 4.

Sometime prior to April 4, 1968, Robert Ackoff and three colleagues—Tommy James, Bobby Bloom and defendant Richard Rosenblatt—coauthored the well-known song "Mony, Mony". *See id.* ¶ 6.[3] "Mony, Mony" was first registered for copyright with the United States Copyright Office (the "Copyright Office") by Patricia Music Publishing Corporation ("Patricia Music") on April 8, 1968. *See id.* ¶ 7. Patricia Music's copyright registration listed Ackoff, James, Bloom and Rosenblatt as authors of the song. *See id.* As mandated under the Copyright Act of 1909, Pub.L. 60–349, 35 Stat. 1075 (1909) (previously codified at 17 U.S.C. §§ 1–216) (repealed 1976), the copyright in "Mony, Mony" was effective for twenty-eight years. *See Fred Ahlert Music Corp. v. Warner/Chappell Music, Inc.*, 155 F.3d 17, 19 (2d Cir.1998). Thus, the renewal copyright term, which lasts an additional twenty-eight years, commenced on January 1, 1997. *See id.* ¶ 11. Since 1968, Robert Ackoff's share in any renewal copyright of "Mony, Mony" has been the subject of several assignments as well as multiple federal and state litigations.

## A. The Assignments

### 1. The Assignments to Patricia Music and Nomadam

Shortly after Robert Ackoff authored "Mony, Mony", he assigned his interest in the initial term of copyright in that song to Patricia Music. *See id.* ¶ 7. On December 1, 1971, Robert Ackoff further assigned all his interest in "Mony, Mony" to Nomadam Music Corp. ("Nomadam"), a company affiliated with Patricia Music. *See id.* ¶ 8. On August 31, 1988, Patricia Music's and Nomadam's interests in "Mony, Mony" were assigned, after various intermediary transfers, to defendant Windswept. *See id.* ¶ 9. Windswept registered "Mony, Mony" with the Copyright Office for the renewal term of copyright on February 5, 1996, again listing Ackoff, James, Bloom and Rosenblatt as the authors of the song and as the renewal claimants. *See id.* ¶ 10. A year and a half later, on August 20, 1997, Windswept filed a supplementary registration with the Copyright Office, claiming that Patricia Music, rather than Robert Ackoff, was an author of "Mony, Mony" pursuant to exclusive songwriter agreements between Robert Ackoff and Patricia Music dated January 18, 1967 and June 5, 1967. *See id.* ¶¶ 13, 14. According to Windswept, Robert Ackoff authored "Mony, Mony" as a "work made for hire," and therefore, Windswept, as Patricia Music's successor, is entitled to Robert Ackoff's interest in the renewal copyright in "Mony, Mony". *See id.* ¶ 14.[4] On August 28, 1997, the Copyright Office issued a supplementary registration reflecting the change sought by Windswept, namely that Patricia Music rather than Robert Ackoff was an author of "Mony, Mony". *See id.* ¶ 13. On July 28, 1999, EMI acquired Windswept's interest in "Mony, Mony". *See id.* ¶ 16.

### 2. The Assignment to Rosenblatt

Because Robert Ackoff died intestate in 1983 while "Mony, Mony" was still in its original term, Cele Ackoff, as Robert Ackoff's next of kin, claimed—and still claims—ownership of the renewal copyright in that song. *See id.* ¶ 11. In October 1988, Rosenblatt approached Cele Ackoff about recovering from Windswept Robert Ackoff's share of the renewal copyright in many songs, including "Mony, Mony". *See id.* ¶ 19. More than one year

---

**3.** Rosenblatt is professionally known as "Ritchie Cordell." *See* Amended Complaint ¶ 5.

**4.** The Copyright Act defines a "work made for hire" as "a work prepared by an employee within the scope of his or her employment." 17 U.S.C. § 101. Pursuant to the Copyright Act, "[i]n the case of a work made for hire, the employer or other person for whom the work was prepared is considered the author for purposes of [federal copyright law]." 17 U.S.C. § 201(b).

later, on January 10, 1989, an agreement was drafted by Rosenblatt and delivered to Cele and Jon Ackoff ("the 1989 Agreement"). *See id.* ¶ 20. Pursuant to the 1989 Agreement, Cele and Jon Ackoff assigned to Rosenblatt their expectancies of renewal copyrights in twenty-one of Robert Ackoff's songs ("the 21 Songs"), including "Mony, Mony". *See id.* In return, Rosenblatt agreed to pay Jon fifty percent of any royalties he recovered on such copyrights, except royalties derived from public performances. *See id.*

On March 28, 1997, Rosenblatt—purportedly acting as Cele Ackoff's "attorney-in-fact"—executed an additional document assigning Cele Ackoff's renewal copyrights in eight of Robert Ackoff's songs, including "Mony, Mony", to himself ("the 1997 Transfer Document"). *See* Assignment of Renewal Copyrights, Ex. B to 2/14/00 Letter from Howard Gotbetter, Esq., Counsel for Rosenblatt, to Court ("2/14/00 Gotbetter Letter"). It is unclear, and the parties do not explain, why Rosenblatt executed the 1997 Transfer Document in light of the parties' earlier 1989 Agreement which assigned Cele Ackoff's renewal copyrights in songs such as "Mony, Mony" to Rosenblatt. It is also unclear precisely when Cele Ackoff learned of the 1997 Transfer Document.[5]

### 3. The Assignment to Susan Ackoff-Ortega

On February 14, 1996, Cele Ackoff assigned to her daughter, Susan Ackoff-Ortega, her interest in the renewal copyright in "Mony, Mony". *See* Amended Complaint ¶ 12. Cele Ackoff made this assignment of rights to Ackoff-Ortega notwithstanding her previous assignment of those same rights to Rosenblatt under the 1989 Agreement.

### B. The Lawsuits

### 1. Rosenblatt's Lawsuits Against Windswept Concerning Rosenblatt's Copyrights

Beginning in 1993, Rosenblatt commenced several lawsuits against Windswept. In the first lawsuit, filed in federal court, Rosenblatt sought to recover his interest in approximately 59 songs, including the 21 Songs. *See id.* ¶ 26(a). That lawsuit did not involve Robert Ackoff's interest in the 21 Songs. *See id.*[6] Rosenblatt's first suit was dismissed on March 22, 1994 for lack of subject matter jurisdiction. *See id.*

On December 29, 1994, Rosenblatt filed a second and identical action in New York State court ("the 1994 State Suit"). *See id.* ¶ 26(b). On September 13, 1995, during Rosenblatt's deposition in the 1994 State Suit, Rosenblatt stipulated to exchange general releases with Windswept and to dismiss the 1994 State Suit against Windswept with prejudice. *See id.* ¶ 26(e). Approximately seventeen months later, on February 18, 1997, Rosenblatt delivered to Windswept a general release of all claims against Windswept which Rosenblatt had or might ever have arising out of any

---

**5.** Indeed, the 1997 Transfer Document is not explicitly referred to in either the Complaint or the Amended Complaint. However, as discussed *infra* Part II.B.2, plaintiffs do reference Rosenblatt's June 23, 1998 cancellation of Cele Ackoff's assignment to him of her renewal copyright in "Mony, Mony". *See, e.g.,* Amended Complaint ¶ 36. Because Rosenblatt's cancellation was handwritten on the side of the 1997 Transfer Document, *see infra* Part II.B.2, the 1997 Transfer Document is necessarily incorporated in the Amended Complaint and properly considered by this Court as part of the pleadings. *See supra* Part I; *see also Cortec Indus. Inc. v. Sum Holdings L.P.,* 949 F.2d 42, 48 (2d Cir.1991) (finding that documents referred to or incorporated in the complaint may properly be considered by the district court, even if those documents are not attached as exhibits).

**6.** Because Rosenblatt was one of four authors of "Mony, Mony", he owns one-quarter of the renewal copyright in that song, independent of his claim to Robert Ackoff's renewal copyright (assuming Rosenblatt did not author the song as a work for hire). Rosenblatt's individual share of the renewal copyright in "Mony, Mony" is not the subject of the instant lawsuit.

events on or before September 13, 1995 ("the Release"). *See id.* ¶ 26(g). Plaintiffs claim that they did not learn of Rosenblatt's release until sometime after April 20, 1998. *See id.* ¶ 27.

Rosenblatt's third lawsuit against Windswept was brought in this Court on June 5, 1996 ("the 1996 Federal Suit"). *See id.* ¶ 26(f). In this third action, Rosenblatt claimed that he owned the renewal copyrights in six of the 21 Songs and in four other songs, and that Windswept had infringed, and continued to infringe, such copyrights. *See id.* On August 26, 1996, Rosenblatt voluntarily dismissed the 1996 Federal Suit against all defendants with prejudice. *See id.*

### 2. The Lawsuits Concerning Robert Ackoff's Share of Renewal Copyrights

Rosenblatt's first attempt to recover Robert Ackoff's share of the renewal copyrights in "Mony, Mony" occurred on January 6, 1995. On that date, Rosenblatt's agent, Richard Roemer, wrote Windswept claiming Robert Ackoff's share in the renewal copyrights in ten of the 21 Songs, including "Mony, Mony". *See id.* ¶ 26(c). Windswept responded to Roemer's letter on April 12, 1995, informing Roemer that Windswept owned those renewal copyrights by virtue of the work-for-hire agreement signed by Robert Ackoff on January 18, 1967. *See id.* ¶ 26(d).

Three weeks later, on April 20, 1998, Rosenblatt commenced his fourth litigation against Windswept, again in this Court ("the 1998 Federal Suit"). *See id.* ¶ 26(h). In the 1998 Federal Suit, Rosenblatt sued Windswept, Cele Ackoff, Susan Ackoff–Ortega and various other parties seeking a judicial declaration that he alone owned Robert Ackoff's share of the renewal copyrights in "Mony, Mony" and two other songs. *See id.* ¶ 26(h). Among other things, Rosenblatt's 1998 Federal Suit

sought to void Cele Ackoff's February 14, 1996 assignment to Ackoff–Ortega of her interest in the renewal copyright in "Mony, Mony". *See id.* ¶ 12. Plaintiffs claim that they learned of Rosenblatt's prior suits only upon commencement of the 1998 Federal Suit. *See id.* ¶ 27.[7]

During a pre-trial conference on June 22, 1998, this Court indicated to Rosenblatt's attorney that it would be inclined to grant Windswept summary judgment based upon the Release and the expiration of the three-year statute of limitations for actions under the Copyright Act. *See id.* ¶ 26(h). The Court further indicated that if Rosenblatt pursued litigation against Windswept, Rule 11 sanctions might be warranted. *See* Transcript from June 22, 1998 hearing at 10–11, Ex. E to 2/14/00 Gotbetter Letter.

One day later, on June 23, 1998, Rosenblatt executed a document canceling Cele Ackoff's assignment to him of the renewal copyright in "Mony, Mony" and seven other Robert Ackoff songs ("the Retransfer Document"). *See* Amended Complaint ¶ 36. Rosenblatt created the Retransfer Document via a handwritten rider on the side of the 1997 Transfer Document stating: "Richard Rosenblatt cancels this Assignment and transfers back to Cele Ackoff the Renewal Copyrights listed and all rights therein. Dated: June 23, 1998." *See* Assignment of Renewal Copyrights, Ex. B to 2/14/00 Gotbetter Letter. Directly below this handwritten sentence is Rosenblatt's signature. *See id.* The Retransfer Document was disclosed to Cele Ackoff, through her attorney, sometime after June 24, 1998. *See* Amended Complaint ¶ 36.

On June 24, 1998, two days after the Court conference and one day after Rosenblatt executed the Retransfer Document, Rosenblatt dismissed with prejudice the 1998 Federal Suit against Windswept. *See*

---

7. Also in 1998, Rosenblatt filed a lawsuit against the Ackoffs in state court ("the 1998 State Suit"). The Ackoffs filed counterclaims in the 1998 State Suit that are substantially similar to their claims against Rosenblatt in this case. *See Ackoff I,* 98 F.Supp.2d at 533.

*id.* ¶ 26(h). He dismissed the action against Cele Ackoff and Susan Ackoff–Ortega without prejudice. *See id.*

### 3. The Instant Lawsuit

On December 1, 1999, the Ackoffs sued Windswept, Screen Gems–EMI Music and Rosenblatt in this Court. On February 1, 2000, Rosenblatt moved to dismiss the Ackoffs' original complaint or, alternatively, to stay the Ackoffs' federal action pending resolution of the 1998 State Suit. In an Opinion and Order dated June 5, 2000, Rosenblatt's motion was denied. *See Ackoff I*, 98 F.Supp.2d 530. Approximately three weeks later, on June 29, 2000, plaintiffs filed an Amended Complaint.[8] The Amended Complaint asserts five claims, the first against Windswept pursuant to federal copyright law and the remaining four against Rosenblatt pursuant to state contract law.[9]

Claim I of the Amended Complaint alleges that "Mony, Mony" is not a "work made for hire" as that term is defined under the Copyright Act. *See* Amended Complaint ¶¶ 14–15; *see also* 17 U.S.C. § 101. Therefore, plaintiffs argue, Robert Ackoff's share in the renewal copyright in that song belongs to plaintiffs—not Windswept. *See id.* ¶¶ 14–15. Pursuant to Claim I, plaintiffs seek a declaratory judgment that Ackoff–Ortega, not Windswept, owns Robert Ackoff's share of the renewal copyright in "Mony, Mony". *See id.* at 8(A). In addition, plaintiffs demand that

Windswept account for and pay to them any royalties or other monies that Windswept earned from Robert Ackoff's renewal copyright in "Mony, Mony". *See id.* at 8(B). Plaintiffs contend that in recent years Robert Ackoff's share in "Mony, Mony" has generated total royalties of approximately $80,000 annually. *See id.* ¶ 17.

Claims II, III, IV and V are brought solely against Rosenblatt, and thus they are not directly challenged by Windswept here. However, because the issues raised in Claim II are pertinent to resolution of the pending motion, I briefly describe that claim below.

Claim II alleges that the 1989 Agreement between Cele and Jon Ackoff and Rosenblatt was unconscionable. *See id.* ¶¶ 18–23. Plaintiffs contend that Cele and Jon Ackoff signed the 1989 Agreement without legal representation and without knowledge of the music industry. *See id.* ¶ 21. Moreover, Cele Ackoff was 74–years–old when she signed the contract, and Jon Ackoff suffered from depression and Aspergers Syndrome, a disease which resembles autism. *See id.* Cele Ackoff also claims that because of the close friendship between Robert Ackoff and Rosenblatt, she placed her trust and confidence in Rosenblatt. *See id.* ¶ 22.[10]

### III. DISCUSSION

Windswept now seeks judgment on Claim I citing three grounds: (1) the set-

---

8. In addition, on July 14, 2000, pursuant to a stipulation among the parties, plaintiffs voluntarily dismissed Screen Gems EMI Music from the action and served EMI Virgin Music, Inc., the proper EMI defendant. *See* 7/14/00 Stipulation ¶¶ 2, 3, 6.

9. The Amended Complaint originally included a fifth state law claim against Rosenblatt. However, plaintiffs voluntarily dismissed that claim with prejudice pursuant to the parties' July 14 stipulation. *See* 7/14/00 Stipulation ¶ 1.

10. Claim III seeks to void the 1989 Agreement for lack of consideration, and Claim IV charges Rosenblatt with breach of the 1989

Agreement. *See* Amended Complaint ¶¶ 24–29, 32–34. In essence, both claims allege that rather than attempt to recover Robert Ackoff's share of the renewal copyrights in the 21 Songs as promised under the 1989 Agreement, Rosenblatt instead jeopardized plaintiffs' interests in those copyrights by, among other things, pursuing his own interests in various songs; delaying litigation on behalf of Robert Ackoff's share in those songs until after the statute of limitations had expired; and delivering the Release to Windswept. *See id.* ¶¶ 26, 33. Claim V alleges that the Retransfer Document rescinded the 1989 Agreement and seeks a judicial declaration to that effect. *See id.* ¶¶ 35–37.

tlement and voluntary dismissal with prejudice of Rosenblatt's 1998 Federal Suit against Windswept bars plaintiffs' suit pursuant to the doctrine of res judicata; (2) the Copyright Act's three-year statute of limitations has expired; and (3) the Release signed by Rosenblatt binds plaintiffs as well. Each of these grounds is addressed in turn below.[11]

### A. Res Judicata

As set forth *supra* Part II.B.2, Rosenblatt voluntarily dismissed with prejudice his 1998 Federal Suit against Windswept. Because that suit involved claims against Windswept identical to the claims asserted by plaintiffs here, Windswept argues that plaintiffs' action is barred. *See* Memorandum of Law of Defendants Windswept Pacific Entertainment Co. and Screen Gems–EMI, Inc. in Support of Motion for Judgment on the Pleadings ("Def.Mem.") at 8–13.

■ Res judicata, also referred to as claim preclusion, "applies to preclude later litigation if the earlier decision was (1) a final judgment on the merits, (2) by a court of competent jurisdiction, (3) in a case involving the same parties or their privies, and (4) involving the same cause of action." *In re Teltronics Servs., Inc.*, 762 F.2d 185, 190 (2d Cir.1985). Thus, "[a] judgment on the merits in a prior suit bars a second suit involving the same parties or their privies based on the same cause of action." *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n. 5, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979). A voluntary dismissal with prejudice is an adjudication on the merits for purposes of res judicata. *See Chase Manhattan Bank, N.A. v. Celotex Corp.*, 56 F.3d 343, 345 (2d Cir.1995). However, of relevance here, a dismissal for lack of standing does not have preclusive effect. *See St. Pierre v. Dyer*, 208 F.3d 394, 400 (2d Cir.2000) (holding that dis-

missal for lack of standing has no res judicata effect on a later lawsuit).

The Amended Complaint asserts that the Retransfer Document, which purports to cancel Cele Ackoff's assignment to Rosenblatt of the renewal copyright in "Mony, Mony", was executed on June 23, 1998—one day before Rosenblatt dismissed the 1998 Federal Suit. *See* Amended Complaint ¶ 36.

■ Assuming the facts in the Amended Complaint to be true, as I must in reviewing a Rule 12(c) motion, *see AD/SAT a Div. of Skylight*, 885 F.Supp. at 514, the Retransfer Document was an effective transfer of title from Rosenblatt to Cele Ackoff of the renewal copyright in "Mony, Mony". And, had this Court known of the transfer, Rosenblatt's complaint would have been dismissed based on lack of standing, rather than voluntarily with prejudice. *Cf. Hernandez v. Conriv Realty Assocs.*, 182 F.3d 121, 123 (2d Cir.1999) ("Article III deprives federal courts of the power to dismiss a case with prejudice where federal subject matter jurisdiction does not exist."). Accordingly, Rosenblatt's voluntary dismissal of the 1998 Federal Suit is properly construed as a dismissal for lack of standing, and thus it can have no preclusive effect here. *See St. Pierre*, 208 F.3d at 400.

### B. Statute of Limitations

■ Windswept next argues that plaintiffs' suit is barred by the Copyright Act's three-year statute of limitations. *See* Def. Mem. at 13–15. Specifically, the Copyright Act provides: "No civil action shall be maintained under the provisions of this title unless it is commenced within three years after the claim accrued." 17 U.S.C. § 507(b).

The Second Circuit has held that a claim accrues under the Copyright Act "when a

---

11. By order of the Court dated June 30, 2000, Rosenblatt was permitted to file a memorandum in opposition to Windswept's motion for judgment on the pleadings, despite the fact

that he is not a party to Claim I. *See* 6/30/2000 Order Permitting Rosenblatt Memorandum in Opposition to Defendants' Motion for Judgment on the Pleadings.

plaintiff knows or has reason to know of the injury upon which the claim is premised." *Merchant v. Levy*, 92 F.3d 51, 56 (2d Cir.1996). Thus, "a plaintiff claiming to be co-author of a copyrighted song must seek a declaration of his rights within three years from the date he knows or has reason to know he has been deprived of those rights." *Margo v. Weiss*, 96 Civ. 3842, 1998 WL 2558, at *5 (S.D.N.Y. Jan.5, 1998), *aff'd*, 213 F.3d 55, 59 (2d Cir.2000). As a general matter, an individual author is first deprived of his or her ownership rights in a copyrighted work at the time a copyright registration which fails to list the individual as an author is filed. *See id.* at *6 ("Any injury plaintiffs suffered by virtue of not receiving credit as co-authors of 'Lion' first occurred in 1961, the year in which the copyright certificate listing the lyricists [rather than the plaintiffs] as authors was filed."); *see also Willsea v. Theis*, 98 Civ. 6773, 1999 WL 595629, at *5 (S.D.N.Y. Aug.6, 1999) ("[O]nce an author registers his copyright, any [unlisted] co-author exercising reasonable diligence should be aware that another person has claimed authorship.").

Plaintiffs were not deprived of any coauthorship rights in "Mony, Mony" until at least August 28, 1997, the date the Copyright Office—at the request of Windswept—issued a supplementary registration removing Robert Ackoff as an author of the song. *See supra* Part II.A.1. Indeed, from April 1968, the date "Mony, Mony" was first registered for copyright, through August 1997, the copyright and renewal copyright registrations clearly listed Robert Ackoff as one of four coauthors of "Mony, Mony". *See supra* Part II.A.1. Any injury to Robert Ackoff's status as coauthor first occurred in August 1997, and therefore the limitations period for plaintiffs' coauthorship claim under the Copyright Act commenced on that date.[12]

Windswept argues that the limitations period was triggered not by issuance of the supplementary registration but by the company's April 12, 1995 letter informing Rosenblatt's agent that Windswept owned Robert Ackoff's share of the renewal copyright in "Mony, Mony" pursuant to a work-for-hire agreement. *See* Def. Mem. at 14; *supra* Part II.B.2. It is Windswept's position that the April 1995 letter "repudiated" the copyright registration listing Robert Ackoff as a coauthor of "Mony, Mony". *See* Reply Memorandum of Law of Defendants Windswept Pacific Entertainment Co. and Screen Gems–EMI, Inc. in Support of Motion for Judgment on the Pleadings ("Def. Reply Mem.") at 8. Windswept's argument is unpersuasive. Even assuming that the April 1995 letter was sufficient to somehow repudiate Robert Ackoff's official registration as coauthor of "Mony, Mony", Windswept subsequently withdrew its purported repudiation on February 5, 1996, when it registered the renewal copyright in "Mony, Mony" listing not itself but Robert Ackoff as coauthor of the song. Put simply, although Windswept arguably challenged Robert Ackoff's status as coauthor of "Mony, Mony" in 1995, it withdrew that challenge less than a year later by stating unequivocally in filings with the Copyright Office that Robert Ackoff was, in fact, a coauthor of "Mony, Mony".[13]

---

12. Plaintiffs do not dispute that they knew or had reason to know of the challenge to Robert Ackoff's authorship in August 1997.

13. Windswept alternatively contends that its February 1996 listing of Robert Ackoff as coauthor merely tolled the statute of limitations for a period of eighteen months. *See* Def. Reply Mem. at 8, n. 2. Thus, according to Windswept, the limitations period was (i) triggered by the April 1995 letter; (ii) tolled in February 1996, when Windswept repudiated the letter; and (iii) restarted in August 1997

when the supplementary registration issued. Windswept's alternative argument is no more persuasive than its primary argument. This Court is unaware, and Windswept fails to cite, any tolling doctrine which protects defendants who engage in such inconsistent behavior. Windswept may have challenged Robert Ackoff's authorship in April 1995. However, it affirmatively declared that Robert Ackoff was an author in February 1996. Windswept's 1996 declaration did not toll the limitations period of any coauthorship claim that

Because plaintiffs filed this action on December 1, 1999, well within the three-year limitations period that commenced on August 28, 1997, their coauthorship claim is not time-barred.

## C. The Release

As discussed *supra* Part II.B.1, on September 13, 1995—during his deposition in the 1994 State Suit—Rosenblatt agreed to exchange general releases with Windswept. Rosenblatt formalized this agreement via the Release, a document executed by Rosenblatt in February 1997. Among other things, the Release provides that Rosenblatt

> releases and discharges the RELEAS-EE [Windswept], RELEASEE's heirs, executors, administrators, successors, and assigns from all actions, causes of actions, suits, debts, dues, sums of money, accounts, reckonings, promises, variances, trespasses, damages, judgments, extents, executions, claims and demands whatsoever, in law, admiralty or equity, which against the RELEASEE, the RE-LEASOR [Rosenblatt], RELEASOR's heirs, executors, administrators, successors and assigns ever had, now have, or hereafter can, shall, or may have, for, upon, or by reason of any matter, cause or thing whatsoever from the beginning

of the world to the day of the date of this RELEASE [September 13, 1995]. *See* Release, Ex. 3 to Answer of Defendants Windswept Pacific Entertainment Co. and Screen Gems–EMI Music, Inc. ("Answer").[14]

Windswept argues that the Release by Rosenblatt is equally binding on plaintiffs because, at the time the Release was executed, Cele and Jon Ackoff had assigned all of their rights in the 21 Songs, including "Mony, Mony", to Rosenblatt pursuant to the 1989 Agreement. *See* Def. Mem. at 15; *supra* Part II.A.2.[15] It is Windswept's position that the Release discharged plaintiffs' coauthorship claim against Windswept and therefore plaintiffs cannot assert that claim here.[16]

In response, plaintiffs advance three arguments. *First,* plaintiffs contend that, in executing the Release, Rosenblatt and Windswept did not intend to discharge any claims other than those specifically at issue in the 1994 State Suit. *See* Plaintiffs' Brief in Opposition to Motion of Windswept and EMI For Judgment on the Pleadings ("Pl. Opp.") at 10.[17] *Second,* plaintiffs contend that even assuming Rosenblatt released his own claims against Windswept, he could not release the Ackoffs' claims against Windswept. *See id.* at 10. *Third,* plaintiffs contend that the 1989 Agreement

---

plaintiffs could have brought. Rather, the 1996 declaration made any such claim unnecessary.

**14.** The Release is a standard printed form commonly used in New York. Such forms, known as "Blumberg" general releases, include blank spaces for the parties to print and sign their names and fill in the relevant dates. Because the Release is explicitly referred to and incorporated in the Amended Complaint, *see* Amended Complaint ¶ 26(g), it is properly considered by the Court as part of the pleadings. *See supra* note 5.

**15.** The 1989 Agreement remained in effect until 1998 when Rosenblatt executed the Retransfer Document canceling Cele Ackoff's prior assignment. *See supra* Part II.B.2.

**16.** Technically, Windswept contends that plaintiffs' coauthorship claim accrued "no later than April 12, 1995" and argues that be-

cause plaintiffs' claim "accrued prior to the effective date of the release, the release dismissed the claim." Def. Mem. at 15. However, this Court has already determined that plaintiffs' coauthorship claim accrued in August 1997, not April 1995. *See supra* Part III.B. That plaintiffs' coauthorship claim arose after September 1995 (the effective date of the Release) is immaterial to Windswept's argument regarding the binding effect of the Release on plaintiffs. As discussed *infra,* the broad language of the Release encompasses claims by Rosenblatt—and his successors and assigns—arising both prior to and subsequent to the effective date of that document.

**17.** As discussed *supra* Part II.B.1, the 1994 State Suit made no claims with respect to Robert Ackoff's share of the renewal copyright in "Mony, Mony".

was unconscionable. Therefore, plaintiffs allege, Cele Ackoff's assignment to Rosenblatt was void and he had no power to release claims against Windswept with respect to Robert Ackoff's share in "Mony, Mony". *See id.* at 11. Plaintiffs' arguments are unavailing for the reasons set forth below.

### 1. Scope of the Release

 A release is a species of contract, and therefore its interpretation is governed by general principles of contract law. *See Mangini v. McClurg*, 24 N.Y.2d 556, 562, 301 N.Y.S.2d 508, 249 N.E.2d 386 (1969); *Aetna Cas. & Sur. Co. v. Jackowe*, 96 A.D.2d 37, 468 N.Y.S.2d 153, 157 (2d Dep't 1983). Accordingly, although the intent of the parties is paramount in deciding the effect of a release, where the terms of a release are unambiguous such intent must be discerned from the four corners of the document rather than from extrinsic evidence. *See Wells v. Shearson Lehman/American Express, Inc.*, 72 N.Y.2d 11, 12, 530 N.Y.S.2d 517, 526 N.E.2d 8 (1988) ("[T]he courts must look to the language of a release—the words used by the parties—to determine their intent, resorting to extrinsic evidence only when the court concludes as a matter of law that the contract is ambiguous."); *Oxford Commercial Corp. v. Landau*, 12 N.Y.2d 362, 365, 239 N.Y.S.2d 865, 190 N.E.2d 230 (1963) (same).

Here, the plain language of the Release makes clear that the parties intended to settle all claims and litigation between Rosenblatt and Windswept. In unambiguous and sweeping terms, the settlement releases Windswept from all actions and suits "whatsoever" which Rosenblatt and his successors and assigns "ever had, now [have], or hereafter can, shall or may have." *See* Release, Ex. 3 to Answer.

Despite the plain language of the Release, plaintiffs argue that Rosenblatt and Windswept did not intend to settle all litigation between them. According to plaintiffs, Rosenblatt and Windswept intended to limit the settlement to those claims directly at issue in the 1994 State Suit. Of course, the 1994 State Suit did not involve Robert Ackoff's share of the renewal copyright in "Mony, Mony". *See supra* Part II.B.1.

In support of their argument, plaintiffs do not allege that the terms of the Release are ambiguous. Nor do plaintiffs attempt to offer extrinsic evidence which would demonstrate that Rosenblatt and Windswept intended their settlement to have narrow application. Rather, plaintiffs rely almost exclusively on *Cahill v. Regan*, 5 N.Y.2d 292, 299, 184 N.Y.S.2d 348, 157 N.E.2d 505 (1959), in which the New York Court of Appeals stated that the "meaning and coverage [of a general release] necessarily depend, as in the case of contracts generally, upon the controversy being settled and upon the purpose for which the release was actually given." Plaintiffs' reliance is misplaced. The facts at issue in *Cahill* are entirely distinguishable from those presented here.

In *Cahill*, general releases were exchanged in a replevin action by Regan against Cahill, the executor of Regan's former employer. Pursuant to the replevin action, Regan sought to regain possession of machinery he left with his former employer when he departed that employment. Several years later, Cahill sued Regan seeking a declaratory judgment that the former employer was the owner of a patent issued to Regan. The court permitted the second suit despite the general release Cahill had provided to Regan, finding that the subject matter of the first suit—ownership of machinery in Cahill's possession—had no relation to the subject matter in the second suit—ownership of a patent. *See id.* at 299–300, 184 N.Y.S.2d 348, 157 N.E.2d 505. Furthermore, the *Cahill* court emphasized that at the time Regan and Cahill exchanged releases, no patent existed and Cahill was unaware that Regan had applied for a patent. *See id.* at 299, 184 N.Y.S.2d 348, 157 N.E.2d 505.

In contrast, the 1994 State Suit and the instant action by the Ackoffs concern substantially similar subject matter. Both suits focus on Windswept's interest in various songs, including "Mony, Mony". More important, when Rosenblatt formally executed the Release on February 18, 1997, Windswept and Rosenblatt (if not plaintiffs) were both aware that a dispute was brewing over Robert Ackoff's share of the renewal copyright in "Mony, Mony". For example, on January 6, 1995, and as described *supra* Part II.B.2, Rosenblatt's agent wrote Windswept claiming Robert Ackoff's share in "Mony, Mony". On April 12, 1995, Windswept responded that it owned Robert Ackoff's renewal copyright in "Mony, Mony" by virtue of a work-for-hire agreement. In short, the controversy over "Mony, Mony" began nine months before Rosenblatt and Windswept agreed to exchange general releases and almost two years before Rosenblatt executed the Release. If Rosenblatt did not intend to include the dispute over "Mony, Mony" within the scope of the Release, he could have—and should have—inserted limiting language.

Similarly, the Release promised to discharge Windswept from "all actions ... whatsoever." Rosenblatt surely understood, or should have understood, the significance of such a broad discharge, particularly in light of the fact that he was represented by counsel when he signed the Release. *See Locafrance U.S. Corp. v. Intermodal Sys. Leasing, Inc.*, 558 F.2d 1113, 1115 (2d Cir.1977) (stating that in commercial context, when parties are in roughly equivalent bargaining position and are represented by counsel, the court will not interfere with the clear wording of a release).

### 2. The Effect of the Release on the Ackoffs

Plaintiffs alternatively contend that even assuming Rosenblatt broadly released his own claims against Windswept, he could not release the Ackoffs' claims against Windswept. According to plaintiffs, the Release, "by its own language[,] covered only claims of Rosenblatt and his 'heirs, executors, administrators, successors and assigns'; it did not purport to release any represented party." Pl. Opp. at 10. Plaintiffs further allege that Rosenblatt was not authorized to discharge plaintiffs' claims against Windswept because the Release "does not designate Rosenblatt as an agent, does not give him power of attorney, and does not authorize him to execute any documents on behalf of Cele Ackoff or the other plaintiffs." *Id.* Not only are plaintiffs' arguments inconsistent, but they misapprehend the relationship between Rosenblatt and the Ackoffs as well as the effect of the 1989 Agreement.

The 1989 Agreement states, in pertinent part, as follows:

> Grantors [Cele Ackoff and John Ackoff] and each of them hereby bargain, sell, assign, transfer, grant and set over unto the Publisher [Rosenblatt], its successors and assigns, *forever and free and clear of any and all rights, interest, claims and encumbrances*, Said Compositions [including "Mony, Mony"] and all rights and interests therein and thereto vested and contingent, now possessed or hereafter acquired under any and all renewals and extensions of all copyrights therein together with all such renewals and extensions thereof, and each of Assignors does hereby *authorize and empower the Publisher [Rosenblatt] to renew pursuant to law for and in his or her name* as his or her interest may at any time appear, the copyrights of Said Compositions.

1989 Agreement, Ex. C to Amended Complaint, ¶ 2 (emphasis added).

As the language quoted above makes clear, the 1989 Agreement was an unambiguous transfer of Cele Ackoff's renewal expectancy in "Mony, Mony" to Rosenblatt. Thus, in executing the 1989 Agreement, Cele Ackoff effectively renounced her expected legal ownership of the renewal copyright in the 21 Songs. By virtue of

the complete transfer of renewal copy-rights to Rosenblatt, Rosenblatt had the power—indeed, as plaintiffs' cause of action asserting a breach of contract makes clear, the duty—to assert claims to Robert Ackoff's share of the renewal copyright in "Mony, Mony" and other songs. A necessary corollary to this duty is that Rosenblatt had an unencumbered right to settle those claims. Because the Retransfer Document, *see supra* Part II.B.2, cannot have transferred to Cele Ackoff any more rights than Rosenblatt had, the Release discharged all of Cele Ackoff's claims. Similarly, because Susan Ackoff–Ortega's and Jon Ackoff's interests in the renewal copyright in "Mony, Mony" are derivative of Cele Ackoff's interests, the Release necessarily discharged Jon Ackoff's and Ackoff–Ortega's claims. *See James McKinney & Son, Inc. v. Lake Placid 1980 Olympic Games, Inc.*, 92 A.D.2d 991, 461 N.Y.S.2d 483 (3d Dep't 1983) (client bound by release entered into by client's surety); *M.F. Hickey Co. v. Imperial Realty Co.*, 73 Misc.2d 498, 342 N.Y.S.2d 186, 188 (N.Y.Sup.1972) ("Since the assignee's contractual rights are derivative, it may not receive what its assignor could not."). The fact that plaintiffs were unaware that Rosenblatt had signed the Release is immaterial. *See Cory v. Nintendo of Am., Inc.*, 185 A.D.2d 70, 592 N.Y.S.2d 6, 8 (1st Dep't 1993) ("That the releases were signed, without [the principal's] knowledge, by his agent ... does not affect the efficacy of these instruments to bind [the principal].").

**b. Any claim of unconscionability is time-barred**

█ Plaintiffs' final contention is that even if the Release does cover Robert Ackoff's renewal copyright in "Mony, Mony", there is a factual dispute as to whether the 1989 Agreement was unconscionable. Plaintiffs maintain that if the 1989 Agreement was unconscionable, Cele Ackoff's original assignment to Rosenblatt was void, and therefore Rosenblatt had no power to release future claims against

Windswept with respect to Robert Ackoff's share in the renewal copyrights. *See* Pl. Opp. at 11. Regardless of the merits of plaintiffs' unconscionability argument, it is time-barred for the reasons set forth below.

Under New York law, unconscionability claims are governed by a six-year statute of limitations. *See* N.Y. C.P.L.R. 213(2) (McKinney 1990). An unconscionability claim accrues upon execution of the challenged agreement. *See Carter v. Goodman Group Music Publishers*, 848 F.Supp. 438, 445 (S.D.N.Y.1994) ("Rescission is an equitable remedy and is subject to a six year statute of limitations. A claim for rescission on the grounds of duress or unconscionability accrues upon the execution of the agreement.") (internal citations omitted); *35 Park Ave. Corp. v. Campagna*, 48 N.Y.2d 813, 815, 424 N.Y.S.2d 123, 399 N.E.2d 1144 (1979) (claim that lease is unconscionable accrues at execution of lease, and expires six years thereafter, notwithstanding that its effect may last the life of the lease). Applying this principle here, the six-year limitations period for any unconscionability challenge to the 1989 Agreement commenced in January 1989 and expired in January 1995, nearly four years prior to the filing of this action.

To avoid the statute of limitations problem, plaintiffs rely on an oral decision in the 1998 State Suit holding that the statute of limitations did not commence until Cele Ackoff's expectancy in the renewal term actually vested. *See* Pl. Opp. at 11; Transcript of Decision of Justice Schlesinger From February 23, 2000, Ex. 1 to 3/20/00 Reply Brief of Defendant Rosenblatt in Support of His Dismissal Motion, at 13 ("It's important to note here that nothing of any consequence would have happened vis-a-vis this 1989 agreement until the *re*newal rights were asserted at all and that didn't happen until 1996, 1997. That's what the agreement deals with.").

Windswept was not a party to the 1998 State Suit and cannot be bound by that holding under the doctrine of issue preclusion. *See Green v. Montgomery*, 219 F.3d 52 (2d Cir.2000). Moreover, no party in the 1998 State Suit cited *35 Park Ave. Corp.*, a binding authority from New York's highest court. *See* Def. Reply Mem. at 10. In fact, in the memoranda of law the Ackoffs submitted to the court in the 1998 State Suit, plaintiffs did not cite a single case supporting their position. *See* Defendants' Supplemental Brief in Opposition to Plaintiff's Amended Motion to Dismiss Counterclaims, Ex. 9 to 6/21/00 Reply Declaration of Scott L. Baker in Support of Motion for Judgment on the Pleadings of Defendants Windswept Pacific Entertainment Co. and Screen Gems–EMI Music, Inc. ("6/21/00 Baker Reply") at 2–3; Defendants' Second Supplemental Brief in Opposition to Plaintiff's Amended Motion to Dismiss Counterclaims, Ex. 9 to 6/21/00 Baker Reply at 6. In short, the statute of limitations commenced upon execution of the 1989 Agreement and any claim of unconscionability is now time-barred.

#### D. The State Law Claims

In *Ackoff I*, this Court chose to exercise supplemental jurisdiction over plaintiffs' state law claims. *See Ackoff I*, 98 F.Supp.2d at 536. However, I agreed to reconsider my decision if the federal claim was subsequently dismissed. *See id.*

Pursuant to 28 U.S.C. § 1367(c)(3), a district court may decline to exercise supplemental jurisdiction over state law claims where "the district court has dismissed all claims over which it has original jurisdiction." Because plaintiffs' only federal claim cannot survive dismissal, I now decline to exercise supplemental jurisdiction over plaintiffs' remaining state law contract claims. *See Martinez v. Simonetti*, 202 F.3d 625, 636 (2d Cir.2000) (directing dismissal of supplemental state law

claims where no federal claims remained).[18]

#### IV. Leave to Amend

Under Federal Rule of Civil Procedure 15(a), "leave to amend shall be freely granted when justice so requires." However, the decision whether to grant leave to amend rests within the sound discretion of the district court. *See Cresswell v. Sullivan & Cromwell*, 922 F.2d 60, 72 (2d Cir.1990). The Second Circuit has held that "futility" provides a solid ground on which to deny leave to amend. *See Marchi v. Board of Coop. Educ. Servs. of Albany*, 173 F.3d 469, 478 (2d Cir.), *cert. denied*, 528 U.S. 869, 120 S.Ct. 169, 145 L.Ed.2d 143 (1999); *Cortec Indus.*, 949 F.2d at 48.

Plaintiffs have already amended their complaint once without success. Any additional attempts to amend the complaint would be both futile and unfair to defendants and this Court. The claim against Windswept is dismissed because of the Release that Rosenblatt signed. Nothing can be done to remedy this problem even if plaintiffs were permitted to amend the Complaint. Accordingly, Windswept's motion is granted without leave to amend.

#### V. CONCLUSION

For the foregoing reasons, Windswept's motion for judgment on the pleadings is granted with prejudice. The Clerk of the Court is directed to close this case.

SO ORDERED.

---

18. Because this Court declines to exercise supplemental jurisdiction over plaintiffs' state law claims, it is unnecessary to reach the merits of those claims.