Susan **ACKOFF–ORTEGA**, **Cele Ackoff, and Jon Ackoff, Plaintiffs,**

v.

**WINDSWEPT PACIFIC ENTERTAINMENT CO. (INC.), EMI Virgin Music, Inc., and Richard Rosenblatt, Defendants.**

**No. 99 CIV. 11710(SAS).**

United States District Court, S.D. New York.

Dec. 11, 2000.

Frederick F. Greenman, Jr., Deutsch Klagsbrun & Blasband, New York City, for Plaintiffs.

Scott L. Baker, New York City, for Defendant Windswept Pacific Entertainment Co.

Howard Gotbetter, New York City, for Defendant Richard Rosenblatt.

## MEMORANDUM ORDER

SCHEINDLIN, District Judge.

On December 1, 1999, Susan Ackoff–Ortega, Cele Ackoff, and Jon Ackoff (collectively "the Ackoffs") filed an action seeking a declaratory judgment that Ackoff–Ortega—not defendants—owns the share of the renewal copyright in "Mony, Mony" attributable to Robert Ackoff.[1] On October 11, 2000, this Court issued an Opinion and Order granting Windswept Pacific Entertainment Co. (Inc.) and EMI Virgin Music, Inc. (collectively "Windswept") judgment on the pleadings, pursuant to Federal Rule of Civil Procedure 12(c). The Court held that the general release (the "Release") Rosenblatt provided Windswept discharged plaintiffs' claims against Windswept, including their claim to Robert Ackoff's share of the renewal copyright in "Mony, Mony".[2] See Opinion at *9–*10. The Court also rejected plaintiffs' argument that the January 10, 1989 agreement (the "1989 Agreement") where Cele and Jon Ackoff assigned to Rosenblatt their expectancies of renewal copyrights in twenty-one of Robert Ackoff's songs, including "Mony, Mony", was unconscionable. The Court held that any unconscionability claim was time-barred because New York's six-year statute of limitations began to run at the execution of the 1989 Agreement. See id. at *11.

Plaintiffs now seek reconsideration of the Opinion, pursuant to Rule 6.3 of the Local Civil Rules for the United States District Courts for the Southern and Eastern Districts of New York ("Local Rule 6.3"), and move the Court to alter and amend its final judgment entered on October 13, 2000, pursuant to Federal Rules of

---

1. In addition, plaintiffs asserted four state law claims against defendant Richard Rosenblatt pursuant to state contract law. See Ackoff–Ortega v. Windswept Pac. Entm't Co., 120 F.Supp.2d 273, 277–79 (S.D.N.Y. Oct.11, 2000) ("Opinion").

2. Rosenblatt stipulated to execute a general release during his deposition in the 1994 suit he filed against Windswept in New York State court ("the 1994 State Suit"). See Opinion at *3.

Civil Procedure 59(e) and 60(b). Similarly, defendant Rosenblatt seeks reconsideration of the Opinion, pursuant to Local Rule 6.3, and moves the Court to amend its final judgment, pursuant to Rule 59(e).[3] While reconsideration is granted to both movants, with one exception, the Court adheres to its prior ruling.

## I. LEGAL STANDARD

■ "The standard for granting ... a motion [for reconsideration] is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.,* 70 F.3d 255, 257 (2d Cir.1995). "Because the motion does not afford the losing party the right to submit new evidence to bolster relief, parties are not to submit affidavits in support of a [Local] Rule 6.3 motion for reconsideration 'unless directed by the court.'" *First Fin. Ins. Co. v. Allstate Interior Demolition Corp.,* No. 96 Civ. 8243, 1998 WL 567900, at *3 (S.D.N.Y. Sept.3, 1998). "Motions for reconsideration must be narrowly construed and the standard strictly applied 'to discourage litigants from making repetitive arguments on issues that have been thoroughly considered by the court,' 'to ensure finality,' and 'to prevent the practice of a losing party examining a decision and then plugging the gaps of the lost motion with additional matters.'" *Polar Int'l Brokerage Corp. v. Reeve,* No. 98 Civ. 6915, 2000 WL 1341599, at *1 (S.D.N.Y. Sept.19, 2000) (quoting *Range Road Music Inc. v. Music Sales Corp.,* 90 F.Supp.2d 390, 392 (S.D.N.Y.2000)); *see also Shrader,* 70 F.3d

at 257 ("[A] motion to reconsider should not be granted where the moving party seeks solely to religitate an issue already decided.").[4]

## II. FACTS

The pertinent facts were discussed extensively in the Court's prior opinions, and will not be repeated here. *See* Opinion, 2000 WL 1509993, at *1–*5; *Ackoff–Ortega v. Windswept Pac. Entm't Co.,* 98 F.Supp.2d 530, 531–33 (S.D.N.Y.2000). Familiarity with those opinions is assumed.

## III. DISCUSSION

■ Collectively, plaintiffs and Rosenblatt advance four arguments in support of their motions for reconsideration. *First,* Rosenblatt contends that the Court considered matters outside the pleadings in deciding the Rule 12(c) motion. *See* Rosenblatt's Memorandum in Support of Reargument/Reconsideration under Local Civil Rule 6.3 Respecting the Opinion and Order of this Court, Docketed October 11, 2000 ("Rosenblatt Mem.") at 2. Accordingly, he argues that the Court should have treated the Rule 12(c) motion as a motion for summary judgment under Rule 56, and provided the parties reasonable opportunity to present all pertinent material. *See id.; see also* Fed.R.Civ.P. 12(c). *Second,* plaintiffs and Rosenblatt maintain that the Court overlooked evidence extrinsic to the Release that demonstrates that the Release did not include Rosenblatt's claim to Robert Ackoff's share of the renewal copyright in "Mony, Mony". *See* Plaintiffs' Memorandum in Support of Motion for Reconsideration ("Pl.Mem.") at 2–3; Rosenblatt Mem. at 4–8. *Third,* plaintiffs

---

3. By order of the Court dated June 30, 2000, Rosenblatt was permitted to file a memorandum of law in opposition to Windswept's motion for judgment on the pleadings despite the fact that he was not a party to the declaratory judgment claim. *See* Opinion at *5 n.11. That order implicitly recognized that Rosenblatt has a serious stake in keeping Windswept in the case. For that same reason, Rosenblatt has standing to bring this motion.

4. The same standard governs motions to amend a final judgment. *See First Fin. Ins. Co. v. Allstate Interior Demolition Corp.,* 1998 WL 567900, at *3 ("Grounds for relief under Rule 59(e) are equivalent to the grounds for relief on a motion for reconsideration under Local Civil Rule 6.3.") (internal quotation marks omitted).

contend that the Court erred in its conclusion that their unconscionability claim is time-barred. *See* Pl. Mem. at 3–4. *Fourth*, Rosenblatt argues that footnote 15 of the Opinion—where the Court stated that the 1989 Agreement was canceled by Rosenblatt in 1998—is inaccurate. *See* Rosenblatt Mem. at 9.[5]

### A. Consideration of Matters Outside the Pleadings

Rosenblatt argues that Windswept's motion for judgment on the pleadings should have been treated as a summary judgment motion because the Court relied on three documents outside the pleadings: (1) a document that Rosenblatt executed assigning him Cele Ackoff's renewal copyright in "Mony, Mony" ("the 1997 Transfer Document"); (2) the transcript of Justice Schlesinger's February 23, 2000 oral decision holding that the Ackoffs' unconscionability claim is not time-barred;[6] and (3) the Ackoffs' memoranda of law, submitted in the 1998 State Suit, which argue that the unconscionability claim is not time-barred. *See* Rosenblatt Mem. at 2.

■ With respect to the 1997 Transfer Document, the Opinion explained that the Amended Complaint necessarily incorporated this document because it referenced Rosenblatt's June 23, 1998 cancellation of Cele Ackoff's assignment to Rosenblatt of her renewal copyright in "Mony, Mony", a cancellation which was handwritten on the side of the 1997 Transfer Document. *See*

Opinion at *2 n.5. Plaintiffs therefore had notice of the 1997 Transfer Document and it can properly be considered part of the pleadings. *See Rothman v. Gregor*, 220 F.3d 81, 88–89 (2d Cir.2000) (pleadings include "documents that the plaintiffs either possessed or knew about and upon which they relied in bringing the suit") (citing *Cortec Indus., Inc. v. Sum Holding, L.P.*, 949 F.2d 42, 48 (2d Cir.1991)).

■ Rosenblatt and the Ackoffs also had notice of the transcript of Justice Schlesinger's oral decision and the Ackoffs' memoranda of law. Indeed, Rosenblatt and the Ackoffs were parties to the 1998 State Suit.[7] Moreover, although a court must limit itself to the pleadings when considering a Rule 12(c) motion, it "may also consider matters of which judicial notice may be taken under Fed.R.Evid. 201." *Kramer v. Time Warner Inc.*, 937 F.2d 767, 773 (2d Cir.1991). Because these documents are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned," Fed.R.Evid. 201(b)(2), this Court was permitted to take judicial notice of Justice Schlesinger's oral decision and the Ackoffs' memoranda of law. *See Kramer*, 937 F.2d at 774 ("[C]ourts routinely take judicial notice of documents filed in other courts, again not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings."). In short, con-

---

5. Rosenblatt also requests that the Court supplement the District Court record with documents annexed as exhibits to his June 21, 2000 memorandum of law and his October 25, 2000 memorandum of law. *See* Rosenblatt Mem. at 10. This request is not appropriate in a motion for reconsideration. Accordingly, it is addressed in a separate Order issued simultaneously with this Opinion and Order. *See Ackoff–Ortega*, No. 99 Civ. 11710 (S.D.N.Y. Dec. 7, 2000) (order denying request to supplement the record on appeal).

6. Justice Schlesinger presides over the 1998 lawsuit Rosenblatt filed against the Ackoffs in New York State court ("the 1998 State Suit").

7. The Court's consideration of these documents did not prejudice Rosenblatt or the Ackoffs. Indeed, in advancing their claim that the 1989 Agreement was unconscionable, plaintiffs requested that the Court rely on Justice Schlesinger's oral decision. *See* Opinion at *11. Moreover, these documents did not affect the Court's decision. Although the Court examined the transcript of Justice Schlesinger's oral decision and the Ackoffs' memoranda of law, the Court ultimately rejected the conclusion reached by Justice Schlesinger and the argument advanced in the Ackoffs' memoranda of law. Undoubtedly, the Court would have reached the same conclusion had it not considered these documents.

sideration of these three documents does not convert the Rule 12(c) motion into a motion under Rule 56.

## B.  Scope of the Release

Plaintiffs and Rosenblatt contend that the Court overlooked extrinsic evidence which showed that the Release Rosenblatt executed was understood not to include "after acquired causes of action," such as the claim to Robert Ackoff's share of the renewal copyright in "Mony, Mony." Rosenblatt explains that he attempted to insert limiting language into the Release— language which specifically excluded from the scope of the Release the rights assigned to him in the 1989 Agreement. However, on February 3, 1997, Justice Lewis R. Friedman, who presided over the 1994 State Suit, rejected Rosenblatt's proposed limitation and directed Rosenblatt to execute a general release as of September 13, 1995. *See* Rosenblatt Mem. at 6.

▮ Plaintiffs and Rosenblatt have not met the demanding standard required by Local Rule 6.3. They attempt to offer extrinsic evidence to alter the meaning of an unambiguous contract, but do not present any facts or controlling authority overlooked by the Court.[8] As stated in the Opinion, the Release unambiguously discharged Windswept from "all actions ... whatsoever" which Rosenblatt and his successors and assigns "ever had, now [have], or hereafter can, shall or may have." Opinion at *8. Neither plaintiffs nor Rosenblatt have shown that the Release—"a species of contract ... [whose] interpretation is governed by general principles of contract law,"—is ambiguous. *Id.* Absent a showing of ambiguity, the Court cannot review extrinsic evidence to contradict the clear meaning of the Release. *See Wells v. Shearson Lehman/Am. Express, Inc.,* 72 N.Y.2d 11, 12, 530 N.Y.S.2d 517, 526 N.E.2d 8 (1988).

Citing *Arias v. Mutual Centr. Alarm Servs., Inc.,* 182 F.R.D. 407, 418 (S.D.N.Y. 1998), Rosenblatt contends that "consideration of the circumstances in which an agreement or release is executed is appropriate in understanding it even when the parol evidence rule applies." Rosenblatt Mem. at 4. Obviously, this is not a *controlling* decision which the Court overlooked. Further, the Court dealt with the same proposition in its analysis of *Cahill v. Regan,* 5 N.Y.2d 292, 184 N.Y.S.2d 348, 157 N.E.2d 505 (1959). *See* Opinion at *8–*9. The Court examined the relevant circumstances in which the Release was executed and concluded that "the controversy over 'Mony, Mony' began nine months before Rosenblatt and Windswept agreed to exchange general releases and almost two years before Rosenblatt executed the Release. If Rosenblatt did not intend to include the dispute over 'Mony, Mony' within the scope of the Release, he could have—and should have—inserted limiting language." *Id.* at *9.[9]

Indeed, even if all of the extrinsic evidence provided by plaintiffs and Rosenblatt were examined, the Court would reach the same conclusion—that the Re-

---

**8.**  The only document that the Court did not consider in its Opinion is Carl E. Person's January 5, 1997 affidavit. *See* Supplemental Affirmation in Opposition, Ex. 1 to Pl. Mem. As plaintiffs readily admit, this document was not submitted to the Court prior to the filing of this motion because plaintiffs did not have a copy of this document at the time the complaint was filed. *See* Pl. Mem. at 2. Accordingly, this document is not part of the pleadings and its consideration is inappropriate. *See Rothman,* 220 F.3d at 88–89.

**9.**  Rosenblatt blames his attorney and Justice Friedman for his decision to sign the general release. Rosenblatt states that his attorney, Carl E. Person, "misspoke" by offering to execute a general release because "a dismissal with prejudice would have been enough for Windswept." Rosenblatt Mem. at 4. Similarly, Rosenblatt argues that the only reason he signed the general release was because "[Justice] Friedman (obviously annoyed at Person) directed a general release be given as of September 13, 1995." *Id.* at 6. If Rosenblatt had felt aggrieved by resolution of the 1994 State Suit, his recourse was to appeal that decision. He cannot attack that judgment six years later in this Court.

lease did not exclude Rosenblatt's claim to Robert Ackoff's share of the renewal copyright in "Mony, Mony". The relevant question is whether plaintiffs and Rosenblatt provided any "extrinsic evidence which would demonstrate that Rosenblatt *and* Windswept intended their settlement to have narrow application." Opinion at *8 (emphasis added). The extrinsic evidence provided by plaintiffs and Rosenblatt suggests that Rosenblatt took some initial action to limit the scope of the Release, but that he ultimately failed to limit its scope. Therefore, the claim that Rosenblatt attempted to insert limiting language into the Release does not alter the interpretation of the general release he ultimately signed.

## C. The Appropriate Statute of Limitations for Plaintiffs' Unconscionability Claim

Plaintiffs also argue that the Court wrongly concluded that their unconscionability claim is time-barred. They argue that the Court "misapprehend[ed] the nature of the issue." Pl. Mem. at 4. Although binding New York authority dictates that the statute of limitations for an unconscionability claim commences upon the signing of a contract, plaintiffs contend that such a rule should not extend to contracts involving inchoate interests, such as future expectancies, which only vest upon the fulfillment of a future event. Plaintiffs argue that such a rule is necessary for practical reasons: "[n]o attorney in his right mind" would take a case involving an expectancy because there is no guaranteed pay off if the future event never occurs. *Id.*

Plaintiffs do not cite any controlling authority overlooked by the Court. In fact, plaintiffs do not cite a single authority in support of this proposition. Plaintiffs ask the Court to create such a rule, since "there is no New York case in point." *Id.* This argument has no place in a motion for reconsideration. At best, it should be addressed on appeal—although it may be equally inappropriate there given that federal courts do not create state law.

Moreover, plaintiffs' fatalistic claim that no attorney would take a case involving a future expectancy of renewal copyrights does not reflect the realities of either the legal community or this case. *First,* lawyers are in business to earn a living and will handle cases where the possible payoff includes a large sum of money. At the time that plaintiffs filed this action, Robert Ackoff's share in "Mony, Mony" was generating total royalties of approximately $80,000 annually. *See* Opinion at *4. In fact, the present value of the royalties accumulating throughout the renewal term for Robert Ackoff's share in "Mony, Mony" is approximately $1 million. *See* Complaint ¶ 34. I have little doubt that had plaintiffs sought to bring an action to rescind the 1989 Agreement within six years of its execution, they could have found a competent attorney to represent them.

*Second,* the fact that plaintiffs only had an expectancy throughout the six-year statute of limitations period would not deter an attorney from taking their case. The Copyright Act provides that where an author dies intestate, unmarried, and childless, and the death occurs while the copyright is in its first term, then the expectancy of the renewal copyright vests in the author's next of kin. *See* 17 U.S.C. § 304(a)(1)(C). These are precisely the circumstances surrounding Robert Ackoff's death. Therefore, by 1995—the last year during which plaintiffs could initiate an action against Rosenblatt—an attorney would be willing to represent the Ackoffs, assuming they had a meritorious action, so long as she believed it likely that one of them would survive until the expectancies vested on January 1, 1997.

## D. Footnote 15 of the Opinion

In Footnote 15 of the Opinion, the Court stated that "the 1989 Agreement remained in effect until 1998 when Rosenblatt executed the Retransfer Document canceling Cele Ackoff's prior assignment."

Opinion at *7 n.15. Rosenblatt protests that this footnote "suggests that the 1989 Agreement between Cele Ackoff and Rosenblatt was cancelled by the so-called 1998 Retransfer Document." Rosenblatt Mem. at 9. He argues that the contractual relationships created by the 1989 Agreement were not affected by the Retransfer Document because the 1989 Agreement "was more than an assignment of a renewal copyright; it was a sharing agreement between the Ackoffs as the 'Grantors' (read 'Authors') and Rosenblatt as 'Publisher'." *Id.*

Rosenblatt correctly notes that footnote 15 of the Opinion is overbroad. The 1989 Agreement dealt with Cele Ackoff's renewal expectancies in twenty-one of Robert Ackoff's songs. The Retransfer Document only affects the ownership of the renewal copyright in eight of Robert Ackoff's songs. Furthermore, the Retransfer Document makes no explicit reference to the 1989 Agreement. A determination of the legal effect of the Retransfer Document on the contractual rights in the 1989 Agreement would be premature. Accordingly, the Opinion should be amended by deleting footnote 15.

## IV. CONCLUSION

For the reasons stated above, reconsideration is granted. However, the Court adheres to its prior ruling, except that footnote 15 of the Opinion is hereby deleted.

SO ORDERED: